FILED

SEP 30 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna, CDCR #BD0868
Pl.,

against

T. Campbell, B. McKinney, A. Johnson, T. Sparks, D. Watson, A. Aranda, E. Moreno, S. Gates, S. Harris, C. Angel, A. Vu, E. McDaniel, M. Whittaker, C. Soares, et al
Defs.

Docket No.: 1:24-cv-01156 EPG GPG

### DEMAND FOR JURY TRIAL

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES

Brought under 42 U.S.C. § 1983 (civil rights action) for violations of the U.S. Constitution.

## A. JURISDICTION & VENUE

1. This is a civil rights action arising under 42 U.S.C. § 1983 to redress the deprivation under the color of state law of rights, privileges, and immunities guaranteed by the Eighth Amdt. to the U.S. Constitution, secured by acts of Congress, providing for equal rights of persons within the jurisdiction of the U.S. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & § 1343 (a)(3). This Court has jurisdiction over Pl.'s action and is empowered to grant injunctive relief pursuant to Fed. R. Civ. P. 65 and may exercise supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue is proper in this judicial district, the Eastern District of California, Fresno Division, pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of the events and actions and omissions giving rise to Pl.'s claims occurred at CSP-COR, California Department of Corrections (CDCR), in Corcoran, CA, Kings County, which is within this judicial district.

## B. INTRODUCTION

3. This is a § 1983 civil rights action brought by Jamie Osuna, a state prisoner, for declaratory and injunctive relief, compensatory and punitive damages under 42 U.S.C. § 1983 alleging

RECEIVED

SEP 30 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

being subjected to unsafe conditions of confinement with/of dangerous, hazardous living conditions, denial of reasonable safety needs, denial of medical care, and for deliberate indifference to Pl.'s serious medical/mental health needs. These above-described unsafe conditions of confinement and deliberate indifference contributed to Pl.'s significant injuries he sustained daily on his body, which injuries were consistent with untreated decompensation. This lack of intervention/treatment led to injuries after Pl. was left in a cell for four months with two broken windows and glass everywhere. Pl.'s cell floor was soaked with blood, covered with bloody rags, other bloody debris. These above-described conditions were visible to CSP-COR Defs. everyday for four months without intervention/treatment, against state/CDCR protocols and policies and in violation of Pl.'s Eighth Amdt. rights guaranteed under the U.S. Constitution.

4. Due to Pl.'s intellectual hardship of being under continual PC 2602 orders, schizophrenia-type mental illnesses, SHU/RHU housing, Pl. received help with the transcribing/writing of this complaint.

### C. PARTIES

5. Pl. Jamie Osuna is a state prisoner incarcerated at CSP-COR, Corcoran, CA.

6. Def. T. (Tammy L.) Campbell is Warden and is being sued in her individual, official capacities.

7. Def. B. (Barbara) McKinney is Associate Warden (AW) and is being sued in her individual, official capacities.

8. Def. E. (Enrique) Moreno is a Lt. and is being sued in his individual, official capacities.

9. Def. T. (Tiffany) Sparks(-Mendoza) is a Mental Health Supervisor and is being sued in her individual, official capacities. CA license # 77726; Board of Behavioral Sciences.

10. Def. S. (Scott) Harris is CSP-COR's Chief of Mental Health (CMH) and is being sued in his individual, official capacities. CA license # 22416; Board of Psychology.

11. Def. A. (Alonzo) Aranda is a Lt. and is being sued in his individual, official capacities.

12. D. (Daniel) Watson is a licensed clinical social worker/clinician and is being sued in his individual, official capacities. CA license # 81005; Board of Behavioral Sciences.

13. C. (Carina) Angel is a licensed clinical social worker/clinician and is being sued in her individual, official capacities. CA license # 124556; Board of Behavioral Sciences.

14. Def. A. (Andrew) Johnson is a Cpt. and is being sued in his individual, official capacities.

15. Def. A. (Alan) Vu is a medical doctor staff psychiatrist and is being sued in his individual, official capacities. CA license # 76543; Medical Board of California. Def. is based out of Orange County, CA, and provides telepsychiatry services to CSP-COR/CDCR.

16. Def. S. (Sara) Gates is CDCR's Chief of medical/mental health care, based in Sacramento, CA, and is being sued in her individual, official capacities.

17. C. (Clint J.) Soares is a Chief Psychologist and is being sued in his individual, official capacities. CA license # 18782; CA Board of Psychology.

18. Def. E. (Eric) McDaniel is CEA and is being sued in his individual, official capacities.

19. Def. M. (Michael) Whittaker is CSP-COR's Health Care CEO and is being sued in his individual, official capacities.

20. Defs. (John/Jane) Does, 1-TBD, were/are CDCR personnel and are being sued in their individual, official capacities.

21. Pursuant to CA GOV § 815.2(a), CDCR and CSP-COR are liable for any unlawful/wrongful acts committed by their employees within the course and scope of their employment.

## D. PREVIOUS LAWSUITS

22. First lawsuit: <u>Asuna v. Brown, et al</u>; Case #: 1:19-cv-00554-EPG; Status: failure to prosecute (dismissed without prejudice.)

23. Second lawsuit: <u>Osuna v. Burnes, et al</u>; Case #: 1:24-cv-00793-KES-SAB; Status: pending.

24. Third lawsuit: <u>Osuna v. Guerrero, et al</u>; Case #: 1:24-cv-01009-KES-SAB; Status: pending.

### E.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. Pl. has exhausted his administrative remedies with respect to all claims and all Defs. CDCR issued log # / health care grievance # 397422/COR-HC-23000809 for Pl.'s grievance for jurisdiction of mental health/medical staff, which was exhausted at all levels in CDCR.

### F.  FACTUAL STATEMENT

26. On or around 01/10/2023, Pl. was discharged from CSP-COR's Crisis Unit after an around 30-day in-patient admission for Pl. displaying dangerous symptoms/side effects from PC 2602 forced psychotropic, antipsychotic medications. Pl. has been under continual PC 2602 orders since around 2020 for serious mental illnesses, being deemed a danger to self/others and gravely disabled (e.g., all of the determining markers required for a PC 2602 order.)

27. On or around 01/10/2023, Pl. was rehoused/assigned to CSP-COR SHU/RHU.

28. On or around 01/15/2023, Pl. displayed mental health symptoms and was escorted to the unit shower, where Pl. attempted to self-harm. Pl. was caught and was unsuccessful.

29. R. Esquivel (CO) escorted Pl. back to his cell. Pl. then broke Pl.'s cell window so that sharp glass shards flew everywhere. Pl. was issued a rules violation report (RVR) log # 7260116 for this incident.

30. The same day, Pl. began cutting himself with glass shards from the broken window.

31. On or around 01/28/2023, Pl. had continued to use the glass shards to cut himself. The blood all over Pl.'s floor and bloody rags/debris were visible to custody and clinical staff through the cell door window and cell door.

32. On or around 01/28/2023, Pl. was escorted to a visit. The cuts on Pl.'s legs and arms, as well as blood and bloody rags/debris were visible to custody staff who were located by the door.

33. Around 11 am to 12:45 pm, F. Camacho (unit officer) was walking the tier when she saw Pl.'s cell door open and noticed the blood.

34. F. Camacho stated, "Is that blood? Is anybody gonna clean this shit up?"

35. F. Camacho then called to R. Muhammed (unit officer) to look at the floor and the blood that was soaked over that concrete floor.

36. Pl. received no treatment and no clinical intervention.

37. While Pl. was at visiting, his visitor saw the cuts on Pl.'s arms and asked Pl. why they [CSP-COR] had not intervened.

38. That same day, Pl.'s visitor reported Pl.'s physical state/living conditions to Rosen, Bien, Galvan, & Grunfeld, LLC (RBGG) (Coleman Project Team.)

39. Pl. was placed back into his cell after his visit, and Pl. began cutting himself with the glass shards again.

40. On or around 01/30/2023, at his visitor's urging, Pl. filed an administrative remedy ("602") requesting to be placed at higher level of care/treatment due to decompensation/trouble managing his mental health episodes and CSP-COR's mental health/other staff acting in deliberate indifference to Pl.'s health and safety. Pl. with that 602 requested body camera footage from the above-described incident and a 7219 medical/injury report.

41. In or around 02/2024, Def. D. Watson (Pl.'s former clinician) approached Pl.'s cell for a scheduled weekly treatment meeting.

42. Pl. informed Def. that Pl. was having side effects/symptoms of Pl.'s serious mental illnesses and medications. Pl. reminded Def. of the safety claimers in Pl.'s file regarding dangerous side effects of his antipsychotic, psychotropic medications. Pl. stated Pl. was feeling agitated, irritated, having insomnia, rapid muscle movement/nerve movements in the body that Pl. cannot control, and continued severe grinding of teeth.

43. Pl. told Def. that Pl. was still blacking out and wasn't remembering a lot that was happening, that when Pl. comes to consciousness, Pl. was finding himself injured with glass stuck on his arms and the bottoms of his feet.

44. Def. stated to Pl., "Well, you can learn how to change your behavior. If you come out and talk [at talk therapy], it will be something."

45. Pl. stated to Def. these side effects are not behavioral issues [they cannot be talked away], that there are permanent side effects like tardive dyskinesia (involuntary muscle movement) that Pl. was experiencing. Pl. stated that Pl. thought Pl. should be in a safer cell or treatment facility because of the broken glass everywhere, that CSP-COR isn't equipped to keep Pl. safe and unable to help Pl. manage side effects symptoms.

46. Def. stated that Def. "didn't agree" with Pl.'s diagnoses.

47. Pl. reminded Def. that CSP-COR repeatedly brings Pl. to administrative court to renew PC 2602 forced medication orders, for which CDCR's/CSP-COR's-appointed psychiatrists submit reports that Pl.'s write ups were due to Pl.'s underlying psychotic processes.

48. Pl. stated, "You're forcing me with psychotropic medications but don't want to deal with or acknowledge the side effects it's having on me or give me the proper treatment that comes with [is required for] being petitioned for PC 2602."

49. Def. stated that Def. "didn't believe in side effects" or the dangers/hazards, and that there was nothing Def. could do but talk to Pl.

50. Pl. asked Def. what about Pl.'s episodes of blacking out and the glass everywhere/blood.

51. Def. stated that Pl. "had to make changes." Def. stated Def. would let Def.'s supervisors know about the broken window and hazards/blood everywhere, and then Def. walked away.

52. During Def. D. Watson's and Pl.'s following weekly-scheduled one-on-one cell side meeting, Def. informed Pl. that Def.'s supervisors wanted to leave Pl. in Pl.'s cell and at Pl.'s current level of treatment (the lowest level of treatment available, CCC.) Pl.'s windows/cell had continued to remain in the same condition since Def.'s and Pl.'s previous meeting.

53. Pl. informed Def. D. Watson that Pl. has been cutting and experiencing various mental health symptoms/episodes since their last meeting.

54. Def. D. Watson stated, "You should come out [to talk therapy]. I'll see you next week." Def. then walked away. This continued week after week.

55. In or around the beginning of 04/2023, Pl.'s newly assigned clinician C. Angel approached Pl's cell. Pl.'s window was still broken, blood was everywhere in the cell, and Pl. had visible injuries on Pl.'s arm.

56. During their discussion, Pl. informed Def. C. Angel of Pl.'s serious mental illness diagnoses (unspecified schizophrenia, psychotic disorder, mood disorder, PTSD), which a qualified neuropsychologist and CDCR-top specialist determined via extensive testing on Pl. Pl.

informed Def. that Pl. has been under continual PC 2602 orders for involuntary medication, and that from these medications Pl. was experiencing severe side effects/issues.

57. Def. C. Angel (an associate social worker by license/training at that time) stated to Pl. that yes Pl. was on antipsychotics, and Pl. was in a bad situation/harming himself, but that Pl. was responsible for Pl.'s behaviors and that Pl. should admit this. Def. had Pl.'s diagnoses only as a personality disorder—against CDCR's prior test results and PC 2602 petitions.

58. Pl. asked Def. C. Angel why was Pl. stuck in that cell having serious side effects/symptoms with blacking out and broken window glass/hazards and waking up with injuries without help, and why was Pl. not allowed a higher level of treatment and kept in a safer environment.

59. Def. C. Angel stated, "Well, I know, I know, but you at least, if something, can come to your one-on-ones [talk therapies]."

60. Pl. stated that that doesn't change his unsafe living conditions. Pl. stated that treatment talk therapy does not fix chemical side effects that Pl. was having, and it doesn't stop the injuries that were out of Pl.'s control.

61. CSP-COR mental health staff [e.g., Defs. T. Sparks, C. Angel, D. Watson, Does] had not accepted recommendations and were not following CDCR/state policies guiding how to properly address symptoms like what Pl. experiences. CSP-COR, without new testing and without changes in industry definitions, then changed/stated Pl.'s diagnoses was only "personality disorder" enabling/justifying their decisions for Pl. Conversely, the PC 2602 petitions CSP-COR filed listed another different diagnosis.

62. Def. C. Angel stated she would inform Def. A. Johnson (unit captain) about the broken window, but that there's nothing she could otherwise do.

63. After this meeting, Pl. continued to have/exhibit symptoms/side effects and continued to wake up with injuries on his body and glass stuck to him.

64. The following week, Def. C. Angel stated to Pl. that Defs. A. Johnson and the AW and higher ups did not want to move Pl. to a safer location.

65. In or around 04/2023, Pl.'s treating psychiatrist Def. Dr. Vu. approached Pl.'s cell via telepsychiatry. (e.g., Dr. Vu's assistant came to Pl.'s cell and held up a laptop with a speaker for Pl. and Def. to remotely discuss Pl.'s mental health through the cell door over the laptop.) Def. Dr. Vu asked through this laptop how Pl. was doing.

66. Pl. asked Def. whether Pl. could be taken off of PC 2602 because Pl. had been compliant with and never refused his medication and had been having side effects—including irreversible tardive dyskinesia, self harming/desire to self harm, having blackouts where Pl. wakes up afterward with injuries. Def. Dr. Vu stated, "Well, you should come out and talk [at talk therapy sessions]. There's nothing I can do since you didn't come out." Dr. Vu then stated, "I'll see you next time." Pl. received no treatment or intervention for Pl.'s self-injurious behavior and side effects.

67. During Pl.'s next telepsychiatry appointment with Def. Dr. Vu, Pl. explained to Def. that Pl. had to go to suicide watch because of side effects and that Pl. hadn't been feeling well. Dr. Vu asked how Pl. was feeling then. Pl. stated, "I'm having insomnia and rapid muscle, face movements and grinding of teeth, constipation, pain in my stomach, induced psychosis, blackouts, and I've been self injuring. Some injuries I don't remember doing." Def. Dr. Vu stated to Pl., "I hope you do well. I'll see you next week." Pl. received no treatment or medical intervention.

68. On or around 03/20/2023, Pl. interviewed with L. Lulow (licensed clinical social worker) for a 602. At that time, L. Lulow stated to Pl. that in his [qualified] opinion, Pl. needed a higher level of care, more intensive mental health treatment. L. Lulow stated he was disappointed in L. Lulow's supervisors. L. Lulow stated his supervisor Def. T. Sparks had stated that Def. T. Sparks would not help Pl. because Def. T. Sparks thought Pl. was "evil" and that "you can't cure evil." L. Lulow stated he didn't realize his supervisors were like that, that he was disappointed in such medieval thinking, and that L. Lulow couldn't believe these supervisors were allowing Pl. to stay in a dark, damp cell, alone and known as harming himself/decompensating. L. Lulow at that time had stated that out of all people, Pl. didn't belong there.

69. Against L. Lulow's recommendations, Pl. did not receive more intensive treatment. Pl. received no further safety/security regarding the broken window/shards and self-harm.

70. Pl. broke the other cell window and began using the bigger shards of glass to self-mutilate without intervention.

71. On or around 04/20/2023, unit officers Resendes and Ayala and RN Waite had completed a 7219 medical/injury form on Pl.

72. On or around 04/28/2023, an incident occurred with/from Pl. having symptoms/side effects. Pl. received a write-up/RVR over the incident. Pl.'s arms were cut up at that time. A unit sgt. approached with RN Jane Doe. They asked Pl. if Pl. had any injuries and whether those injuries were from that same day. Pl. stated that Pl.'s injuries were "from everyday going back from yesterday." Pl. was in and out of blackouts when they were asking Pl. questions. Pl. informed the sgt. that Pl. had not been receiving mental health help/treatment and that Pl.

had cuts to the bottoms of Pl.'s feet and should be moved to a safer cell. Pl.'s injuries were documented that day. No further medical treatment or evaluations were given to Pl.

73. On or around 05/05/2023, Pl. stayed up all night cutting on himself.

74. On third watch, Pl. had a scheduled visit.

75. Pl. was escorted to his visit with visible fresh wounds, and blood in/around his cell, which mental health and other prison staff during their multiple daily rounds/general duties around/with Pl. had seen but, against CDCR/state protocols/policies, had not intervened.

76. While Pl. was at visiting, Pl.'s visitor noticed the cuts on his arms. Again, Pl. responded that they [CSP-COR] were not concerned/didn't care and didn't intervene, that the unit sgt. stated that the warden wanted/required Pl. to be in that specific cell because of how the cell is designed. Even when staff acknowledged this had put/was putting Pl. in harm's way and contributing to Pl.'s injuries, that's how they [Warden and management] wanted it.

77. After the visit, Pl. was escorted back to his cell with the same broken window, bloody rags/debris on the floor. Pl. began cutting again and had active, noticeable bleeding.

78. That same day, Pl.'s visitor contacted RBGG informing them of what she had seen at the visit and expressed her concerns at how CSP-COR was managing Pl.'s mental health episodes.

79. On that same day, RBGG contacted CSP-COR about Pl. and their concerns, and about the phone call they received from Pl.'s loved one.

80. Around 5 pm, because of RBGG's contact, Def. E. Moreno approached Pl.'s cell. Def. stated to Pl. that since there was no clinicians at CSP-COR (clinicians leave at 4 pm) there was no one to evaluate and clear the Pl., and that because of this Pl. had to be placed in the Crisis Unit until the morning when Pl. would come back [to Pl.'s cell.]

81. Def. E. Moreno asked if Pl. was bleeding. Pl. lifted his arm and showed Def. active bleeding from gashes in Pl.'s right arm.

82. Def. E. Moreno asked Pl., "How long have you had the two broken windows?" and Pl. stated, "For around four months."

83. Def. Moreno stated that Pl.'s cell should have been red lined, tagged, closed off. Pl. stated that he had been cutting himself with glass for months and no one addressed the issue, that when he came out for visit no one cared that Pl. had blood everywhere, bloody rags.

84. Def. E. Moreno stated to Pl. that Pl.'s "friend needed to be careful what that friend says because when/if suicide is mentioned they [CSP-COR] are forced to act." The actual policy is that upon any staff becoming aware/being put on notice of an inmate self-harming, that staff must stand post until clinical intervention presents to perform an evaluation. It was only being addressed now because RBGG had contacted CSP-COR.

85. Def. A. Aranda refused Pl.'s request to move to another cell.

86. Def. E. Moreno stated to Pl., "For now you have to go to Crisis. We're going to pull you out and [unit officer I.] Torres and [unit officer R.] Muhammad while you're gone will clean up your cell and I promise you'll be out by the morning."

87. Pl. then agreed and grabbed a piece of ripped sheet and tied off his arm to stop the bleeding.

88. Pl. was escorted to the Crisis Unit where Pl. was checked out at the Treatment Triage Area.

89. Jane Doe (RN) looked at Pl.'s wound, refused to clean it, and stated, "Let suicide watch deal with it."

90. Pl.'s arm was dripping with blood over the bed. The escorting unit officer stated to Jane Doe (RN) "[Pl.] is bleeding. There's blood getting everywhere. Aren't you going to clean it?"

91. Jane Doe (RN) stated, "Let them do it. He may not be able to have the wrapping back there."

92. Def. E. Moreno told Pl. that the AW said, "You'll be discharged out by the morning.'"

93. The escorting unit officer stated to Pl., "They're always just sending you back and you continue to do the same thing. I don't understand."

94. Pl. was then placed in Crisis Unit for around thirteen hours and discharged the next morning.

95. Pl. was then placed back in the same cell with the broken windows, with bloody toilet paper rolls, bloody, ripped up towels, et al, still on the floor.

96. During that same day, Pl. began to decompensate and used the glass shards to cut on himself again without further treatment/intervention.

### G.  CAUSES OF ACTION

### CLAIM ONE

### EIGHTH AMDT. TO THE U.S. CONSTITUTION

### CONDITIONS OF CONFINEMENT

97. Pl. realleges and incorporates paragraphs 1-96 as though fully set herein.

98. The actions/omissions of Def. A. Aranda (Lt.) failed to result in the immediate closing off of Pl.'s cell and failed to result in an order for Pl.'s cell windows to be fixed for around four months. Def. failed to remove Pl. from the substantial risk when Def. was daily put on notice of incidents/injuries Pl. was suffering from the hazard of broken glass shards. Additionally, Def. was one of the supervisors who ordered that Pl. not be moved for any reason from this cell. The actions/omissions of Def. A. Aranda demonstrated deliberate indifference, had constituted unsafe conditions of confinement, and violated Pl.'s right to be

free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. As a proximate result of the Def.'s violations of Pl.'s right to be free from cruel and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-COR.

99. The actions/omissions of Def. T. Campbell failed to result in providing Pl. reasonable safety when as Warden it was Def.'s mandatory duty to provide reasonable safety. Def. allowed/ordered Pl.'s unsafe conditions, that under no circumstances should Pl. be moved out of his cell to another cell. Def. had been put on notice that Pl.—a CDCR-documented *Coleman* inmate known for self-harming—had broken windows, bleeding/blood everywhere, that Pl.'s cell should be red lined and closed off, that Pl. was using the glass shards to cut himself. Def. failed to address Pl.'s broken cell windows for around four months, and out of those around 120 days with blood/bloodied debris everywhere, only one time was a partial cleaning effort made. Def. continued to order/allow Pl. to remain in the same unsafe cell conditions even after Pl. had multiple Crisis Unit admissions over self-injuries/decompensation arising from Pl.'s serious mental illnesses and PC 2602 side effects. Unit officials had put Def. on notice not only about Pl.'s state/conditions of confinement but their recommendations for Pl. needing a higher level of mental health treatment.

100. The actions/omissions of Def. T. Campbell resulted in Pl. remaining in inhumane, hazardous conditions for four months with broken glass everywhere, bloody debris. The actions/omissions of Def. T. Campbell resulted in Pl. being in continuous pain, had caused the consistent back-to-back incidents of injuries, and nerve damage with overall loss of

feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def.'s actions/omissions constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution. As a proximate result of Def.'s violations of Pl.'s right to be free from cruel and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-COR.

101. The actions/omissions of Def. B. McKinney failed to result in providing Pl. reasonable safety, which as Associate Warden was her mandatory duty to provide. Def. allowed/ordered Pl.'s unsafe conditions of confinement. Additionally, on 05/05/2023, Def. pre-determined and ordered to/through Def. E. Moreno that Pl. be discharged from Crisis Unit the next morning and returned back to Pl.'s hazardous cell. The next morning, Pl. was discharged from Crisis Unit and Pl. was returned to the hazardous, bloodied cell that still had two broken windows. Def. B. McKinney, since around 01/15/2023, was consistently put on notice of the injuries of and hazards posed to Pl. Def. continued to take no action for four months. Even upon the order of a unit CO to keep Pl. on suicide watch and move Pl. to another cell, Def. still failed to take action. The actions/omissions of Def. B. McKinney resulted in Pl. remaining in inhumane, hazardous conditions for four months with broken glass everywhere, bloody debris. The actions/omissions of Def. B. McKinney resulted in Pl. being in continuous pain and caused the consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def.'s actions/omissions

constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution. As a proximate result of Def.'s violations of Pl.'s right to be free from cruel and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-COR.

102. The actions/omissions of Def. E. Moreno failed on 05/05/2023 to result in the redline (lock down) of Pl.'s cell due to the unsafe conditions of broken windows and hazardous materials. Def. failed to remove Pl. to a safe cell. Def. knowingly planned/ordered that Pl. would be returned to the same cell/conditions in the morning. This was with the windows still broken when Def. had been on notice of Pl.'s access to the glass shards and that Pl. is diagnosed with serious mental illnesses of unspecified schizophrenia, psychotic disorder, mood disorder, PTSD, that Pl. self-harms during mental health episodes. Def. was additionally on notice that Pl. was under treatment by prison staff for Pl.'s serious mental illnesses and that while Pl. has been under Def.'s/CSP-COR's care, Pl. has had CDCR-documented mental health crisis episodes with/from flashbacks to traumatic events, psychotic episodes, uncontrollable irritation, anxiety, voices/auditory hallucinations, and an overwhelming desire to/actions of self harm.

103. The actions/omissions of Def. E. Moreno resulted in Pl. being in continuous pain, had caused the consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def.'s actions/inactions constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution. As a proximate result of Def.'s violations of Pl.'s

right to be free from cruel and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-COR.

104. The actions/omissions of Def. T. Sparks failed to result in providing safety for Pl. when it was Def.'s mandatory duty as Mental Health Supervisor to provide safe conditions. Def. allowed/ordered the unsafe conditions for Pl. Def. T. Sparks, over multiple dates, had approached Pl.'s cell and had seen deep cuts/wounds on Pl.'s arms, seen broken windows, had been present for RBGG's contact regarding RBGG's concerns of Pl.'s state/conditions of confinement. Def.'s failure, after the above-described incidents, to move/order to move Pl. out of Pl.'s cell to safer conditions, or even to a safe location in Crisis Unit, was against state/CDCR protocols/policies. Def. had instead made Pl. promise that Pl. "won't do it again," had marked down/documented Pl.'s injuries and then walked away. Def. was on notice of Pl.'s access to glass shards and of Pl.'s diagnoses and CDCR-documented history of self-harm. Def. had many opportunities as CSP-COR's Mental Health Supervisor and main participant in Pl.'s IDTT (treatment committee) meetings to remove Pl. to a safer environment and or elevate Pl.'s course of mental health treatments but chose not to do so. The actions/omissions of Def. T. Sparks resulted in Pl. remaining in inhumane, hazardous conditions for four months with broken glass everywhere, bloody debris. The actions/omissions of Def. T. Sparks resulted in Pl. being in continuous pain, had caused the consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def.'s actions/omissions constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the

Eighth Amdt. to the U.S. Constitution. As a proximate result of Def.'s violations of Pl.'s right to be free from cruel and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-COR.

105. The actions/omissions of Def. A. Johnson, after Def. was put on notice of the broken cell windows and that Pl. was sustaining injuries from broken glass, failed to result in ordering Pl.'s cell closed off and fixed for around four months. Def. failed to remove Pl. out of the substantial risk, which failure ensured Pl. continued to sustain injuries. Def., as the building's captain, was consistently present within the unit and reasonably aware of the state/conditions of that building and its inmates, was reasonably aware of the blood all over Pl.'s cell, and Pl.'s in-cell conditions that was hazardous both to Def.'s staff and Pl. Def. failed to provide/summon a hazmat cleaning team and had denied Pl. basic cleaning necessities.

106. Def. was on notice of Pl.'s diagnoses of serious mental illnesses because Def. participates in and is a main decision maker in Pl.'s monthly IDTT/treatment committee meetings. One purpose of these IDTT meetings is reviewing Pl.'s housing assignment and incidents/occurrences. Def. at every opportunity failed to take adequate action and failed to direct orders to his staff under his charge to take adequate action. Additionally, Def. tolerated inadequate mental health treatment by CSP-COR's mental health staff. Unit officers J. Munoz, I. Torres, Resendez, and Balanga wrote/submitted 128-D Chronos in documenting Pl.'s state/living conditions and how these unit officers tried to address the above-described/omitted incidents. These officers' supervisors—including Def. A. Johnson—instead of following state/CDCR protocols/polices had overridden these officers' decisions/recommendations to provide adequate treatment/care to/for Pl., which these

officers then reported this to Pl. These officers' 128-D Chronos clearly established Pl.'s

behaviors and injuries and how these officers tried addressing it. Def. A. Johnson, as unit

captain, was on notice of such 128-D Chronos and or had direct access to these documents.

107. The actions/omissions of Def. A. Johnson resulted in Pl. remaining in inhumane, hazardous

conditions for four months with broken glass everywhere, bloody debris. It resulted in Pl.

remaining in continuous pain, had caused the consistent back-to-back incidents of injuries,

and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to

fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will

continue to suffer irreparable harm, risk, and injury/damage. Def. A Johnson's

actions/omissions constituted unsafe conditions of confinement and violated Pl.'s right to

be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S.

Constitution. As a proximate result of Def.'s violations of Pl.'s right to be free from cruel

and unusual punishment, Pl. suffered the above-described injuries/damages while in CSP-

COR.

108. The actions/omissions of Def. Does failed to result in proper intervention or reporting and

summoning of help for Pl. Def. Does' failure resulted in Pl.'s hazardous conditions and

decompensation and injuries continuing for around four months with Pl.'s permanent

consequences of nerve damage, pain and disfigurement. Def. Does' actions/omissions

constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and

unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

## CLAIM TWO

## EIGHTH AMDT. TO THE U.S. CONSTITUTION

## DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH/MEDICAL NEEDS

109. Pl. realleges and incorporates paragraphs 1-108 as though fully set herein.

110. The actions/omissions of Def. T. Sparks, CSP-COR's Mental Health Supervisor, failed to result in adequately treating Pl.'s serious mental illnesses. Def. was on notice of the broken windows and Pl.'s access to glass from those broken windows. Def. was also on notice that CDCR's top-qualified specialist and an outside neuropsychologist extensively tested/diagnosed Pl. with unspecified schizophrenia, psychotic disorder, mood disorder, PTSD, that Pl. was deemed a danger to self/others, gravely disabled and under PC 2602 orders. Def. was on notice of Pl.'s multiple Crisis Unit admissions over mental health episodes with Pl.'s flashbacks, psychotic episodes, auditory hallucinations, et al, and was on notice of Pl.'s history of self-harm. From this knowledge, it is reasonable that Def. could infer the danger from Pl.'s access to glass shards.

111. On or around 01/28/2023, it was brought to Def.'s attention that Pl. was self injuring with glass shards, which was documented on 02/01/2023. (Logs # 389718/COR-HC-23000632.) Additionally, Def. received RBGG's contact regarding RBGG's concerns about Pl.'s state/conditions of confinement. Upon receipt of this contact, Def. approached Pl.'s cell. Pl. at that time showed Def. and PT Galvan deep gashes in Pl.'s right arm. Def. failed to override Pl. to Crisis Unit where Pl. could have been treated and evaluated. Def. failed to require that Pl. at the minimum be moved to another cell. Against state/CDCR protocols/policies, Def. chose to take no adequate action.

112. On or around 05/05/2023, over three months later, Pl. was still living in the same hazardous conditions with blood/bloody debris all over the floor. Pl. was known by staff to still be self-injuring without intervention or treatment. It took Pl.'s visitor to call RBGG—who then called the AW/Warden—for CSP-COR to act. The action was perfunctory, and Pl.

was simply discharged the next morning and placed back into the same dangerous, hazardous living conditions. Def. during this time oversaw Pl.'s care.

113. The actions/omissions of Def. T. Sparks resulted in Pl. remaining in inhumane, hazardous conditions for four months with broken glass everywhere, bloody debris. The actions/omissions of Def. T. Sparks resulted in Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def. T. Sparks's actions/omissions demonstrated deliberate indifference to Pl.'s health/safety and violated Pl.'s Eighth Amdt. rights guaranteed under the U.S. Constitution. Def.'s actions/omissions proximately caused these injuries/damages.

114. The actions/omissions of Def. D. Watson (social worker/clinician) failed to result in providing Pl. adequate mental health treatment. Def., against state/CDCR protocols/policies, failed to notify custody and summon medical when Pl. informed Def. on multiple dates about Pl.'s unmanaged severe mental illnesses symptoms, that Pl. was self-injuring with glass shards from the broken windows. Def. had been Pl.'s treating clinician from when the window had first been broken, around 01/15/2023, and functioned as Pl.'s clinician for months (until Def. C. Angel took over.) Def. had firsthand knowledge of Pl.'s ongoing difficulty managing mental health episodes, the broken windows, and injuries.

115. The actions/omissions of Def. D. Watson resulted in Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. Def.'s

actions/omissions demonstrated deliberate indifference to Pl.'s health/safety and violated Pl.'s Eighth Amdt. rights guaranteed under the U.S. Constitution. Def. D. Watson's actions/omissions proximately caused these injuries/damages.

116. The actions/omissions of Def. C. Angel (social worker/clinician) failed to result in adequately treating Pl.'s mental illnesses when Pl. expressed having difficulty managing the symptoms of his serious mental illnesses and the side effects from Pl.'s PC 2602 forced antipsychotic, psychotropic medications. Def. over multiple dates had approached Pl.'s cell front and had thereby been put on firsthand notice of the broken cell windows/hazardous living conditions and Pl.'s obvious decompensation. Instead of following state/CDCR protocols/policies, Def. chose to argue against whether Pl. was experiencing symptoms/side effects. Def. disagreed with Pl.'s decompensation and difficulties managing his mental health symptoms because Def., against medical literature and industry standards, and against state/CDCR protocols/policies, felt that Pl. had/has a choice in his mental health episodes, and that due to such a choice Def. did not have to act.

117. Def. at these times was on notice of Pl.'s PC 2602 order, as petitioned by her supervisors, that Pl.'s PC 2602 orders/petitions had been justified by CSP-COR, other facilities, via categorizing Pl. as a danger to self/others and gravely disabled. Each PC 2602 renewal petition, which Def. had access to per her role as Pl.' clinician, listed Pl.'s side effects, including agitation, irritation, hallucinations, et al. Despite this knowledge, Def. willfully ignored Pl.'s calls/requests for help, had denied Pl. constitutionally adequate medical/mental health treatment, which contributed to Pl.'s self-injuries and repeated commitments to the Crisis Unit.

118. On 05/05/2023, Def., and other CSP-COR staff, as herein described, failed in their mandatory duties to stand observation/provide treatment when they believed or were aware an inmate was self harming and or suicidal/homicidal. A civilian/visitor noticed Pl.'s state/condition and contacted RBGG/Coleman Project Team who then forced CSP-COR to act. When custody staff, in response to RBGG's contact, approached Pl.'s cell, Pl.'s arm was at that time dripping with blood. There had been blood/hazardous debris all over the floor, which had been ignored when Pl. was escorted to visit earlier that same day and ignored during other cell approaches.

119. The actions/omissions of Def. C. Angel resulted in Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. has suffered, is suffering, will continue to suffer irreparable harm, risk, and injury/damage. The actions/omissions of Def. demonstrated deliberate indifference to Pl.'s serious medical/mental health needs and violated Pl.'s Eighth Amdt. right to be free of cruel and unusual punishment guaranteed under the U.S. Constitution. Def.'s actions/omissions proximately caused these injuries/damages.

120. The actions/omissions of Def. S. Harris, CPS-COR's Chief of Mental Health, failed to ensure Pl.'s serious mental illnesses were adequately managed/treated by Def.'s staff. Def was put on notice of Pl.'s unacceptable state/conditions of confinement by Def.'s staff/Pl.'s treatment team, other CSP-COR staff, and oversight agency RBGG. Def. was put on notice that Pl. was deprived of much-needed, emergency medical/mental health treatment. Def. ignored unit officers' recommendations who wanted Pl. in a more secure location and or expressed worry about being around the blood and hazardous debris and or that Pl.'s

spontaneously destructive behavior affected everyone in the unit while Def.'s mental health staff were not adequately addressing these incidents/behaviors.

121. The actions/omissions of Def. S. Harris resulted in Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. The actions/omissions of Def. S. Harris demonstrated deliberate indifference to Pl.'s serious medical/mental health needs and violated Pl.'s Eighth Amdt. right to be free of cruel and unusual punishment guaranteed under the U.S. Constitution. Def.'s actions/omissions proximately caused these injuries/damages.

122. The actions/omissions of Def. S. Gates, as health care director in charge of CSP-COR's mental health supervisors, and policy and management decisionmaker, resulted in Def. allowing/tolerating clearly inadequate mental health staff actions/omissions and decisions regarding Pl. Def. allowed/condoned the unsafe and inadequate conditions of CSP-COR's mental health unit with Pl.'s cell dangerous and hazardous for around four months. Def. was aware of Pl.'s diagnoses of serious mental illnesses and PC 2602 involuntary antipsychotic, psychotropic medications orders. Def. was forwarded all mental health administrative remedies regarding Pl.'s injuries and living conditions, including the alleged improper actions/omissions of Def.'s mental health staff. Def. denied Pl.'s request to be removed from the cell to a safer treatment location. Def. was aware of Pl.'s many injuries and repeated placements in Crisis Unit. Def. was on notice that Pl. was at times not receiving any mental health/medical treatment by her staff for Pl.'s serious mental illnesses, side effects, hazardous conditions, injuries. Every time a clinician wanted to raise Pl.'s

level of care and to transfer Pl., Def. S. Gates would request a meeting and or call and intervene, stopping that treatment/transfer.

123. The actions/conduct/omissions of Def. S. Gates resulted in Pl. sustaining serious injuries with keloids (bulging/raised) scars on Pl.'s arms, nerve damage consistent with shooting pain to fingertips from his right arm to his fingertips, numbness, and pain. Pl. has suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. The actions/conduct/omissions of Def. S. Gates demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s Eighth Amdt. right to adequate mental health/medical care guaranteed by the U.S. Constitution. Def. violating Pl's right to be free from cruel and unusual punishment proximately caused these injuries/damages while Pl. was housed at CSP-COR.

124. The actions/omissions of Def. Dr. Vu, after Def. was put on notice of Pl.'s self-injures and difficulty managing Pl.'s mental health symptoms and side effects, failed to result in providing/summoning adequate mental health and medical treatment for Pl. when it was Def.'s mandatory duty to do so. Pl. suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. The actions/omissions of Def. Dr. Vu demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s Eighth Amdt. right to adequate mental health/medical care, and Pl.'s right to be free of cruel and unusual punishment guaranteed by the U.S. Constitution. Def.'s actions/omissions proximately caused these injuries/damages.

125. The actions/omissions of Def. E. McDaniel, as an overseer and final decision maker for *Coleman*/mental health inmate patients, failed to ensure Pl. was in a safe environment and receiving constitutionally adequate mental health/medical care when it was Def.'s

mandatory duty to do so. Def. had a mandatory duty to ensure CSP-COR was properly

implementing all federal, state, and department policies and protocols for mental

health/medical matters, which includes this Court's orders from class actions such as

Coleman v. Newsom, et al. Def. failed to do so, enabling CSP-COR staff to create their

own rules to justify inappropriate decisions and implement medically dangerous decisions.

Additionally, Def. had a mandatory duty to ensure CSP-COR staff adhered to

actual/official policies/protocols regardless of that staff's personal beliefs about side effects

or self autonomy or other matters. Def. failed to do so. Def. E. McDaniel's failures caused

Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of

feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging)

scarring. Pl. suffered, is suffering, and will continue to suffer irreparable harm, risk, and

injuries/damages. The actions/omissions of Def. E. McDaniel demonstrated deliberate

indifference to serious mental health/medical needs and violated Pl.'s Eighth Amdt. right to

adequate mental health/medical care, to be free from cruel and unusual punishment

guaranteed by the U.S. Constitution. Def. violating Pl's right to be free from cruel and

unusual punishment proximately caused these injuries/damages while Pl. was housed at

CSP-COR.

126. Def. M. Whittaker, as an overseer and final decision maker for *Coleman*/mental health

inmate patients, failed to ensure Pl. was in a safe environment and receiving

constitutionally adequate mental health/medical care when it was Def.'s mandatory duty to

do so. Def. had a mandatory duty to ensure that CSP-COR was properly implementing all

federal, state, and department policies and protocols for mental health/medical matters,

which includes this Court's orders from class actions such as Coleman v. Newsom, et al.

Def. failed to do so, enabling CSP-COR staff to create their own rules to justify inappropriate decisions and implement medically dangerous decisions. Additionally, Def. had a mandatory duty to ensure CSP-COR staff adhered to actual/official policies/protocols regardless of that staff's personal beliefs about side effects or self autonomy or other matters. Def. failed to do so. Def. M. Whittaker's failures caused Pl.'s consistent back-to-back incidents of injuries, and nerve damage with overall loss of feeling in Pl.'s right arm and shooting pains to fingertips and keloid (raised/bulging) scarring. Pl. suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. The actions/omissions of Def. M. Whittaker demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s Eighth Amdt. right to adequate mental health/medical care guaranteed by the U.S. Constitution. Def. violating Pl's right to be free from cruel and unusual punishment proximately caused these injuries/damages while Pl. was housed at CSP-COR.

127. The actions/omissions of Def. C. Soares, as Chief Psychologist, failed to ensure Pl. received constitutionally adequate mental health/medical treatment and management of Pl.'s serious mental illnesses and injuries when Def. had a mandatory duty to do so and or had the obligation to transfer Pl. to a facility/area that could adequately provide the suchlike. Pl. suffered, is suffering, and will continue to suffer irreparable harm, risk, and injuries/damages. The actions/omissions of Def. C. Soares demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s Eighth Amdt. right to adequate mental health/medical care guaranteed by the U.S. Constitution. Def. violating Pl's right to be free from cruel and unusual punishment proximately caused these injuries/damages while Pl. was housed at CSP-COR.

128. The actions/omissions of Def. Does failed to result in proper intervention or reporting and summoning of help for Pl. Def. Does' failure resulted in Pl.'s hazardous conditions and decompensation and injuries continuing for around four months with Pl.'s permanent consequences of nerve damage, pain and disfigurement. Def. Does' actions/omissions constituted deliberate indifference to serious mental health/medical needs and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

## H. PRAYER FOR RELIEF

WHEREFORE, Pl. respectfully requests that the Court grant the following relief:

**A. Issue declaratory judgement statements:**

129. Declare Def. A. Aranda (Lt.) in failing to order Pl.'s cell windows to be fixed and to immediately close off the cell, and Def.'s failure to remove Pl. from the substantial risk constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

130. Declare Def. T. Campbell in failing to provide Pl. reasonable safety and allowing/ordering Pl.'s unsafe conditions of confinement, that under no circumstances should Pl. be moved out of his cell to another cell that had broken windows/glass for around four months, constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

131. Declare Def. B. McKinney in failing to provide reasonable safety, in allowing/ordering Pl.'s unsafe conditions of confinement and pre-determining/ordering that Pl. be discharged from Crisis Unit back to the hazardous, bloodied cell that had two broken windows/glass

for around four months, constituted unsafe conditions and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

132.  Declare Def. E. Moreno in failing to redline Pl.'s cell, and pre-determining/ordering Pl. to return to the same cell/conditions in the morning constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

133. Declare Def. T. Sparks in failing to provide safety for Pl. and allowing/ordering unsafe conditions for Pl. constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

134. Declare Def. A. Johnson in failing to order Pl.'s cell closed off and fixed for around four months, and in failing to remove Pl. out of the substantial risk constituted unsafe conditions of confinement and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

135.  Declare Def. T. Sparks in failing to adequately treat Pl.'s serious mental illnesses and leaving Pl. in the same hazardous conditions with bloody debris for around four months demonstrated deliberate indifference to Pl.'s health/safety and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

136. Declare Def. D. Watson in failing to provide/summon Pl. adequate mental health/medical treatment over multiple dates demonstrated deliberate indifference to Pl.'s health/safety and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

137. Declare Def. C. Angel in failing to provide/summon Pl. adequate mental health/medical treatment over multiple dates demonstrated deliberate indifference to Pl.'s health/safety and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

138. Declare Def. S. Harris in failing to ensure Pl.'s serious mental illnesses were adequately managed/treated by Def.'s staff demonstrated deliberate indifference to Pl.'s serious mental health/medical needs and violated Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

139. Declare Def. S. Gates in condoning/tolerating clearly inadequate mental health staff/decisions regarding Pl., in stopping/intervening when staff sought to elevate Pl.'s treatment or to transfer Pl., demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s right to adequate mental health/medical care and Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

140. Declare Def. Dr. Vu in failing to provide/summon adequate mental health and medical treatment for Pl. demonstrated deliberate indifference to serious mental health/medical needs and violated Pl.'s right to adequate mental health/medical care and Pl.'s right to be free of cruel and unusual punishment guaranteed under the Eighth Amdt. to the U.S. Constitution.

141. Declare Def. E. McDaniel in failing to ensure safe conditions of confinement and constitutionally adequate mental health/medical care for Pl., and in failing to ensure CSP-COR staff properly implemented/followed all federal, state, and department policies/protocols, Court orders for mental health/medical matters, demonstrated deliberate

indifference to serious mental health/medical needs and violated Pl.'s right to adequate

mental health/medical care and Pl.'s right to be free of cruel and unusual punishment

guaranteed under the Eighth Amdt. to the U.S. Constitution.

142. Declare Def. M. Whittaker in failing to ensure safe conditions of confinement and

constitutionally adequate mental health/medical care for Pl., and in failing to ensure CSP-

COR staff properly implemented/followed all federal, state, and department policies/

protocols, Court orders for mental health/medical matters, demonstrated deliberate

indifference to serious mental health/medical needs and violated Pl.'s right to adequate

mental health/medical care and Pl.'s right to be free of cruel and unusual punishment

guaranteed under the Eighth Amdt. to the U.S. Constitution.

143. Declare Def. C. Soares in failing to ensure Pl. received constitutionally adequate mental

health/medical care and was in a safe environment, demonstrated deliberate indifference to

serious mental health/medical needs and violated Pl.'s right to adequate mental

health/medical care and Pl.'s right to be free of cruel and unusual punishment guaranteed

under the Eighth Amdt. to the U.S. Constitution.

144. Declare Def. Does in failing to intervene, report, summon help for Pl. for four months

constituted unsafe conditions of confinement, and deliberate indifference to serious mental

health/medical needs and violated Pl.'s right to be free of cruel and unusual punishment

guaranteed under the Eighth Amdt. to the U.S. Constitution.

145. Declare Def. T. Campbell liable for the injuries proximately caused by acts/omissions of

her employees within their scope of employment pursuant to CA GOV § 815.2.

146. Declare Def. S. Gates liable for the injuries proximately caused by acts/omissions of her

employees within their scope of employment pursuant to CA GOV § 815.2.

147. Declare Def. M. Whittaker liable for the injuries proximately caused by acts/omissions of his employees within their scope of employment pursuant to CA GOV § 815.2.

148. Declare Def. S. Harris as liable for the injuries proximately caused by acts/omissions of his employees within their scope of employment pursuant to CA GOV § 815.2.

**B. Issue compensatory damages:**

      a. $ 800,000 for the four months of known hazardous/unsafe conditions of confinement, and Pl.'s permanent disfigurement, and nerve damage and pain.

      b. $ 250,000 per Def. found to have acted in deliberate indifference/in negligence of their mandatory duties.

      c. For all punitive damages in an amount appropriate to punish the Def. and make an example of the Def. to the community.

      d. For any additional general and or specific, consequential and or incidental damages in an amount to be proven at trial.

      e. For all nominal damages.

      f. For all interests, where/as permitted by law.

**C. Issue injunction orders to:**

149. Order/arrange for an immediate change of Pl.'s clinician from Defs. C. Angel, D. Watson.

150. Order the transfer without delay of Pl. to a Department of State Hospital level of care.

151. Order a keep away from CSP-COR and its mental health staff.

152. Prohibit CSP-COR from again treating/housing Pl. in the future for any reason.

153. Order CSP-COR to report any violations found by this Court to the Coleman Master of Coleman v. Newsom, et al, and or to Hon. Kimberly Mueller who presides over that class action.

154. Revoke without stay the CA license of Def. T. Sparks.

**D. GRANT any such other relief as may appear that Pl. is entitled.**

## DEMAND FOR JURY TRIAL

Pl. demands a trial by jury on all issues triable by jury.

Respectfully submitted on September 24, 2024,

*Jamie Osuna*

p.p. Jamie Osuna, CDCR # BD0868

PO Box 3476/CSP-COR

Corcoran, CA 93212