UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE OSUNA,<br><br>              Plaintiff,<br><br> v.<br><br>T. CAMPBELL, *et al.*,<br><br>              Defendants. | Case No. 1:24-cv-01156-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT (1) THIS CASE PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM FOR UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT AGAINST DEFENDANTS ARANDA, MCKINNEY AND JOHNSON; AND (2) ALL OTHER CLAIMS BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>OBJECTIONS, IF ANY, DUE IN THIRTY (30) DAYS<br><br>(ECF No. 1) |

Plaintiff Jamie Osuna is state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  (ECF Nos. 1, 10).  Plaintiff filed the Complaint commencing this action on September 30, 2024. Plaintiff claims that he broke the windows in his prison cell and used the glass to harm himself over a period of months, yet defendants at Corcoran State Prison failed to move him to another cell or provide him with adequate mental health care.

On April 21, 2025, the Court screened Plaintiff's complaint and found that he had stated a cognizable Eighth Amendment Claim for unconstitutional conditions of confinement against

Defendants Aranda, McKinney, and Johnson. (ECF No. 11). The Court found that Plaintiff failed to state any other claims. (*Id.*).

The Court gave Plaintiff thirty days to (1) "file an amended complaint," (2) "file a statement with the Court saying that he wants to go forward on only his Eighth Amendment claim," or (3) "file a statement with the Court saying that he wants to stand on his original complaint and have it reviewed by a district judge." (*Id.* at 2).

Plaintiff filed objections on May 12, 2025. (ECF No. 12). Within those objections Plaintiff argues that the Court's April 21 screening order was incorrect. (*See id.*). Plaintiff did not file an amended complaint or indicate a desire to do so.

For the reasons described below, the Court will recommend that this case proceed on Plaintiff's Eighth Amendment claim for unconstitutional conditions of confinement against Defendants Aranda, McKinney and Johnson. The Court will also recommend that all other claims be dismissed for failure to state a claim. However, if Plaintiff files an amended complaint within thirty (30) days of this order, the Court will vacate this F&R and screen any such amended complaint.

Plaintiff has thirty days from the date of service of these findings and recommendations to file objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 10), the Court may screen the complaint under 28 U.S.C. § 1915. That statute requires that the Court dismiss the case at any time if it determines that the action is either frivolous or malicious, or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

**II.    SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff is a state prisoner incarcerated at California State Prison, Corcoran ("CSP-COR"). (ECF No. 1 at 2). Plaintiff names as Defendants the following individuals in their individual and official capacities (*id.* at 2–3):

1) Tammy L. Campbell, the Warden of California State Prison, Corcoran;

2) Barbara McKinney, the Associate Warden of California State Prison, Corcoran;

3) Enrique Moreno, a Correctional Lieutenant;

4) Tiffany Sparks-Mendoza, a Mental Health Supervisor; CA license# 77726, Board of Behavioral Sciences;

5) Scott Harris, CSP-COR's Chief of Mental Health (CMH); CA license # 22416, Board of Psychology;

6) Alonzo Aranda, a Correctional Lieutenant;

7) Daniel Watson is a licensed clinical social worker/clinician; CA license# 81005, Board of Behavioral Sciences;

8) Carina Angel is a licensed clinical social worker/clinician; CA license# 124556, Board of Behavioral Sciences;

9) Andrew Johnson, a Captain;

10) Dr. Alan Vu, a medical doctor, staff psychiatrist; CA license# 76543, Medical Board of California. Dr. Vu. is based out of Orange County, CA, and provides telepsychiatry services to CSP-COR/CDCR;

11) Sara Gates, CDCR's Chief of medical/mental health care, Sacramento, CA;

12) Clint J. Soares is a Chief Psychologist; CA license # 18782, CA Board of Psychology;

13) Eric McDaniel, CEA;[1]

14) Michael Whittaker, CSP-COR's Health Care CEO;

15) John/Jane Does, 1–TBD, CDCR personnel.

Plaintiff alleges that he has been under continual PC 2602[2] orders since around 2020 for serious mental illnesses, being deemed a danger to self/others and gravely disabled.

On or around January 10, 2023, Plaintiff was discharged from CSP-COR's Crisis Unit after an around 30-day in-patient admission for Plaintiff displaying dangerous symptoms/side effects from PC 2602 forced psychotropic, antipsychotic medications.

On January 15, 2023, Plaintiff broke his cell widow so that sharp glass shards flew everywhere. Plaintiff was issued a rules violation report for this incident. That same day, Plaintiff began cutting himself with glass shards from the broken window.

Plaintiff asserts that for about four months he was subjected to unsafe conditions confinement in his cell because he broke two windows in his cell, yet defendants failed to replace them or move him to another cell. Plaintiff also claims that he did not receive the medical or mental health care he needed.

---

[1] Plaintiff does not explain this abbreviation.

[2] California Penal Code § 2602 concerns when a prisoner may be treated with psychiatric medication without his or her prior informed consent.

4

Plaintiff alleges two causes of action: (1) unconstitutional conditions of confinement and (2) deliberate indifference to serious medical needs. (ECF No. 1 at 13–28).

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. 42 U.S.C. § 1983 Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."

1  *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City
2  of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

3        Additionally, a plaintiff must demonstrate that each named defendant personally
4  participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there
5  must be an actual connection or link between the actions of the defendants and the deprivation
6  alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,
7  691, 695 (1978).

8        Supervisory personnel are not liable under section 1983 for the actions of their
9  employees under a theory of *respondeat superior* and, therefore, when a named defendant
10 holds a supervisory position, the causal link between him and the claimed constitutional
11 violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d
12 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a
13 claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must
14 allege some facts that would support a claim that the supervisory defendants either: personally
15 participated in the alleged deprivation of constitutional rights; knew of the violations and failed
16 to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy
17 itself is a repudiation of constitutional rights and is the moving force of the constitutional
18 violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation
19 marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20       For instance, a supervisor may be liable for his "own culpable action or inaction in the
21 training, supervision, or control of his subordinates," "his acquiescence in the constitutional
22 deprivations of which the complaint is made," or "conduct that showed a reckless or callous
23 indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.
24 1991) (citations, internal quotation marks, and alterations omitted).

25     **B.  Conditions of Confinement**

26       Plaintiff's first cause of action is for unconstitutional conditions of confinement in
27 violation of the Eighth Amendment based on being left in his cell after he broke his cell
28 windows and used the glass to cut himself.  (ECF No. 1 at 13).

1        "It is undisputed that the treatment a prisoner receives in prison and the conditions
2 under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment."
3 *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832
4 (1994). "In prohibiting cruel and unusual punishment, the Eighth Amendment imposes a duty
5 on prison officials to 'provide humane conditions of confinement . . . and [to] take reasonable
6 measures to guarantee the safety of the inmates.'" *Denney v. Redwood City*, No. C 95-2148
7 CAL, 1995 WL 494592, at *1 (N.D. Cal. Aug. 7, 1995) (quoting *Farmer*, 511 U.S. at 832).
8 Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See*
9 *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045
10 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986
11 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners
12 with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v.*
13 *McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*
14 *v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000);
15 *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-
16 33 (9th Cir. 1981).
17        Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511
18 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal
19 quotation marks and citation omitted). Second, "prison officials must have a sufficiently
20 culpable state of mind," which for conditions-of-confinement claims, "is one of deliberate
21 indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with
22 deliberate indifference when they know of and disregard an excessive risk to inmate health or
23 safety; notably the prison official "must both be aware of facts from which the inference could
24 be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*
25 at 837.
26        In support of his conditions of confinement claim, Plaintiff alleges around January 15,
27 2023, Plaintiff broke his cell window, for which he was issued an RVR. (ECF No. 1 at 4). The
28 same day, Plaintiff began cutting himself with glass shards from the broken window. (*Id.*).

1  On January 28, 2023, Plaintiff was escorted to a visit. (*Id.* at 5). The cuts on Plaintiff's legs and arms, as well as blood and bloody rags/debris, were visible to custody staff who were located by the door. Between 11 am to 12:45 pm, Unit Officer F. Camacho—who is not named as a defendant—was walking the tier when she saw Plaintiff's cell door open and noticed the blood. She said, "Is that blood? Is anybody gonna clean this shit up?" F. Camacho then called to Unit Officer R. Muhammed—not a defendant—to look at the floor and the blood that was soaked over that concrete floor.

Around March 2024, Plaintiff broke the other cell window and began using the bigger shards of glass to self-mutilate. (*Id.* at 10).

During a counselling session, Plaintiff told Defendant Watson about the broken window and "glass everywhere" in his cell and told Defendant Angel about broken window in his cell. (*Id.* at 7, 8). Both defendants stated that they would tell their supervisors about broken windows. (*Id.*) Plaintiff alleges that Angel told him that "Defendants Captain Andrew Johnson, Associate Warden Barbara McKinney, and 'higher ups' did not want to move Plaintiff to a safer location." (*Id.* at 9).

Plaintiff alleges that on May 3, 2023, because of his cutting and self-harm, he was taken out of his cell, placed in the Crisis Unit for around thirteen hours, and discharged the next morning. (*Id.* at 13). Plaintiff was then placed back in the same cell with the broken windows, with bloody toilet paper rolls, and bloody, ripped up towels still on the floor. During that same day, Plaintiff began to decompensate and used the glass shards to cut on himself again without further treatment/intervention.

For purposes of screening, the Court finds that Plaintiff has sufficiently alleged that the condition of his cell was unsafe and unsanitary.

The Court next addresses whether Plaintiff has sufficiently alleged that any named defendants acted with deliberate indifference to this condition. Plaintiff's first cause of action names the following Defendants for this claim: A. Aranda, T. Campbell, B. McKinney, E. Moreno, T. Sparks, A. Johnson. Thus, the Court looks to the relevant factual allegations in Plaintiff's complaint related to these defendants.

8

Regarding A. Aranda, Plaintiff alleges in his factual statement that "Def. A. Aranda refused Pl's request to move to another call." (ECF No. 1 at 12). Plaintiff makes this allegation in the context of describing his interaction with Defendant Moreno, who visited Plaintiff on May 5, 2023, and asked how long Plaintiff had been in the cell with broken windows. In Plaintiff's first cause of action, Plaintiff also states that Aranda "was one of the supervisors who ordered that Pl. not be moved for any reason from his cell."

Although Plaintiff's allegations about Aranda are brief and lack information regarding how Plaintiff is aware of Aranda's alleged direction to keep Plaintiff in his call, given that Plaintiff alleged in his factual statement that Aranda refused Plaintiff's request to move to another cell, for the purposes of screening, the Court will permit Plaintiff's claim for unconstitutional conditions of confinement to proceed against Defendant Aranda.

Regarding Warden Campbell, the factual statement in Plaintiff's complaint does not contain any factual allegations about Campbell. In Plaintiff's first cause of action, Plaintiff states that "Def. [Campbell] allowed/ordered Pl.'s unsafe conditions, that under no circumstances should Pl. be moved out of his cell to another cell." However, Plaintiff does not include any factual allegations supporting this statement.

Thus, the Court finds that Plaintiff has failed to allege sufficient facts to state a claim for unconstitutional conditions of confinement against Defendant Warden Campbell.

Regarding McKinney and Johnson, in the factual statement in Plaintiff's complaint, Plaintiff alleges that in or around the beginning of April 2023, C. Angel, an associate social worker, met with Plaintiff in Plaintiff's cell, which still had broken glass and blood "everywhere in the cell." Plaintiff alleges "Def. C. Angel stated that she would inform Def. A. Johnson (unit captain) about the broken window . . . . The following week, Def. C. Angel stated to Pl. that Defs. A. Johnson and the AW [Def. Barbara McKinney] and higher ups did not want to move Pl. to a safe location." (ECF No. 1 at 8–9).

The Court finds that these allegations are sufficient to state a claim against Defendants Johnson and McKinney for unconstitutional conditions of confinement.

Regarding Defendant E. Moreno, Plaintiff alleges that on or around May 5, 2023, Defendant E. Moreno approached Plaintiff's cell and took Plaintiff to the Crisis Unit. Moreno asked Plaintiff how long he had the two broken windows. Plaintiff responded, "For around four months." Moreno stated, "that Pl.'s cell should have been red lined, tagged, closed off." (ECF No. 1 at 12). Moreno stated, "For now you have to go to Crisis. We're going to pull you out and [unit officer I.] Torres and [unit Officer R.] Muhammad while you're gone will clean your cell and I promise you'll be out by the morning." After Plaintiff was taken to the Crisis Unit, Plaintiff alleges that Moreno told Pl. that the AW [McKinney] said "You'll be discharged out by the morning." Plaintiff alleges that he was nevertheless placed back in the same cell the next morning. However, Plaintiff does not allege that Moreno put him back in the cell or had any involvement in the decision to return Plaintiff to the cell after leaving the Crisis Unit. In Plaintiff's first cause of action, Plaintiff states that "Def. [Moreno] knowingly planned/ordered that Pl. would be returned to the same cell/conditions in the morning." However, Plaintiff does not include any factual allegations supporting this conclusory statement.

Thus, the Court finds that Plaintiff has not alleged sufficient facts to state a claim against Defendant Moreno for unconstitutional conditions of confinement.

Regarding Sparks, although Plaintiff's factual statement includes allegations that Sparks, as Mental Health Supervisor, made decisions regarding Plaintiff's mental health, there are no factual allegations that Sparks was involved in any way in Plaintiff's cell placement. In Plaintiff's first cause of action, Plaintiff alleges that Sparks "had many opportunities as CSP-COR's Mental health Supervisor and main participant in Pl.'s IDTT (treatment committee) meeting to remove Pl. to a safer environment or elevate Pl.'s course of mental health treatments but chose not to do so." (ECF No. 1 at 17). However, Plaintiff does not include any factual allegations supporting this conclusory statement.

The Court thus finds that Plaintiff has failed to allege sufficient factual allegations to state a claim against Defendant Sparks for unconstitutional conditions of confinement.

In conclusion, the Court finds that Plaintiff's complaint sufficiently alleges a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment against

Defendants Aranda, McKinney and Johnson, but not against any other named Defendants.[3] Therefore, the Court will recommend that Plaintiff's claim for unconstitutional conditions of confinement proceed against Defendants Aranda, McKinney and Johnson, and that is be dismissed as to all other defendants.

### C. Deliberate Indifference to Serious Mental Health/Medical Needs

Plaintiff's second cause of action is for deliberate indifference to his serious mental health/medical needs in violation of the Eighth Amendment. Plaintiff alleges that Defendants Sparks, Watson, Angel, Harris, Gates, Vu, McDaniel, Whittaker, Soares were aware that Plaintiff needed additional mental health and medical treatment, yet failed to provide him with adequate mental health/medical treatment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

---

[3] In the Court's screening order, it stated that "[i]f Plaintiff believes that he has additional facts indicating that these or any other individuals caused Plaintiff to remain in his cell with broken glass and blood, Plaintiff may file an amended complaint asserting this claim against them and setting forth the specific facts as to how they knew of Plaintiff's condition, had the ability to move him to another cell, yet failed to do so." However, Plaintiff did not file an amended complaint or indicate that he desired to do so.

11

1  *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an
2  unjustifiably high risk of harm that is either known or so obvious that it should be known") is
3  insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825,
4  836–37 & n.5 (1994) (citations omitted).

5        A difference of opinion between an inmate and prison medical personnel—or between
6  medical professionals—regarding appropriate medical diagnosis and treatment is not enough to
7  establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989);
8  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a
9  physician has been negligent in diagnosing or treating a medical condition does not state a valid
10 claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not
11 become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at
12 106. To establish a difference of opinion rising to the level of deliberate indifference, a
13 "plaintiff must show that the course of treatment the doctors chose was medically unacceptable
14 under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

15       To support his claim for deliberate indifference to serious medical needs, Plaintiff
16 alleges that after he was discharged from CSP-COR's Crisis Unit after a 30-day in-patient
17 admission, on January 10, 2023, Plaintiff was rehoused/assigned to CSP-SOR SHU/RHU.  Five
18 days later, Plaintiff broke his own cell window so that glass shards flew everywhere.  Plaintiff
19 began cutting himself with the glass shards from the broken window.

20       Plaintiff then describes his interactions with various mental health professionals,
21 including Defendants, over the next several months.  For example, in February 2024,
22 Defendant D. Watson approached Plaintiff's cell for a scheduled weekly treatment meeting.
23 Plaintiff informed Defendant that he was having side effects/symptoms of Plaintiff's mental
24 illnesses and medications.  Plaintiff reminded Defendant Watson of the "safety claimers" in
25 Plaintiff's file regarding dangerous side effects of his antipsychotic, psychotropic medications.
26 Plaintiff told Defendant that he was still blacking out and finding himself injured with glass on
27 his arms and bottoms of his feet.  Defendant Watson responded "Well, you can learn how to
28 change your behavior.  If you could out and talk [at talk therapy], it will be something."

1  Plaintiff responded that these side effects are not behavior issues—they are permanent side
2  effects like tardive dyskinesia (involuntary muscle movement).  Plaintiff stated that he should
3  be in a safer cell or treatment facility because of the broken glass everywhere, that CSP-COR
4  isn't equipped to keep Plaintiff safe and is unable to help Plaintiff manage side effects and
5  symptoms.  Defendant Watson responded that Defendant Watson "didn't agree" with Plaintiff's
6  diagnosis.  (ECF No. 1 at 6).

7  Similarly, Plaintiff alleges that Defendant Angel, Plaintiff's newly assigned clinician,
8  visited Plaintiff at his cell in April 2023 and saw that Plaintiff's window was broken and
9  Plaintiff had visible injuries.  Plaintiff informed Defendant Angel of Plaintiff's serious mental
10 illness diagnoses (unspecified schizophrenia, psychotic disorder, mood disorder, PTSD), which
11 a qualified neuropsychologist and CDCR-top specialist determined via extensive testing on
12 Plaintiff.  Plaintiff told Defendant Angel that Plaintiff had been under continual PC 2602 orders
13 for involuntary medication, and that from these medications Plaintiff was experiencing severe
14 side effects.  Defendant Angel replied that yes, Plaintiff was on antipsychotics, and Plaintiff
15 was in a bad situation by harming himself, but that Plaintiff was responsible for Plaintiff's
16 behaviors and Plaintiff should admit this.  Defendant Angel stated, "Well I know, I know, but
17 you at least, if something, can come to your one-on-ones [talk therapies]."  Plaintiff responded
18 that treatment talk therapy does not fix chemical side effects that Plaintiff was having, and it
19 doesn't stop the injuries that were out of Plaintiff's control.  (ECF No. 1 at 8).

20 Plaintiff makes similar allegations as to other mental health professional defendants,
21 generally alleging that they saw Plaintiff in his cell with his broken windows and injuries from
22 cutting himself, encouraged Plaintiff to come out of his cell for talk therapy, but otherwise did
23 not provide sufficient mental health treatment for Plaintiff's self-harming behavior.

24 As an initial matter, to the extent Plaintiff is claiming that Defendants should have
25 transferred him to a different cell, the Court has addressed that claim above, in the context of
26 Plaintiff's cause of action for unconstitutional conditions of confinement.  Plaintiff does not
27 allege that transfer to a cleaner cell without broken windows is a medical treatment needed to
28 address Plaintiff's underlying medical or mental health impairments. Rather, transferring

13

Plaintiff to another cell is a way to address Plaintiff's allegedly unsafe conditions of confinement.

Turning to Plaintiff's claim that the mental health Defendants were deliberately indifferent to his serious mental health/medical needs by not providing him with some type of medical or mental health treatment, the allegations in Plaintiff's complaint fail to state such a claim under the relevant legal standards.

First of all, Plaintiff's own allegations demonstrate that the mental health defendants disagreed with Plaintiff's proposed diagnosis and treatment, rather than that they purposefully withheld treatment they believed that Plaintiff needed. Plaintiff's complaint repeatedly describes how the mental health defendants disagreed with Plaintiff's assessment of his mental health treatment needs. For example, Plaintiff alleges that Defendant Watson "didn't agree" with Plaintiff's diagnosis and instead believed that Plaintiff had to "learn how to change your behavior. If you come out and talk [at talk therapy] it will be something." (ECF No. 1 at 6). Similarly, Plaintiff alleges that Defendant Watson told Plaintiff that Defendant Watson "didn't believe in side effects" or the dangers/hazards, and that there was nothing Defendant Watson could do but talk to Plaintiff. (*Id.* at 7). These allegations show a difference of opinion as to Plaintiff's diagnosis and treatment, rather than deliberate indifference to Plaintiff's serious medical needs by purposely withholding treatment that the mental health defendants believed was necessary.

Plaintiff's allegations regarding his PC 2602 orders further demonstrate that the mental health defendants at CSP-COR disagreed with Plaintiff about his mental health treatment. Again, Plaintiff's complaint alleges that he has been under continual PC 2602 orders since around 2020 for serious mental illness. That statute governs when an inmate can be forcibly treated with medication and states, in part:

> (b) If a psychiatrist determines that an inmate should be treated with psychiatric medication, but the inmate does not consent, the inmate may be involuntarily treated with the medication. Treatment may be given on either a nonemergency basis as provided in subdivision (c), or on an emergency or interim basis as provided in subdivision (d).

>      (c) The Department of Corrections and Rehabilitation may seek to initiate involuntary medication on a nonemergency basis only if all of the following conditions have been met:
>
>      (1) A psychiatrist has determined that the inmate has a serious mental disorder.
>
>      (2) A psychiatrist has determined that, as a result of that mental disorder, the inmate is gravely disabled and does not have the capacity to refuse treatment with psychiatric medications or is a danger to self or others.
>
>      (3) A psychiatrist has prescribed one or more psychiatric medications for the treatment of the inmate's disorder, has considered the risks, benefits, and treatment alternatives to involuntary medication, and has determined that the treatment alternatives to involuntary medication are unlikely to meet the needs of the patient.
>
>      (4) The inmate has been advised of the risks and benefits of, and treatment alternatives to, the psychiatric medication and refuses or is unable to consent to the administration of the medication.
>
>      (5) The inmate is provided a hearing before an administrative law judge.

Cal. Penal Code § 2602. In other words, before and at the time of the events in Plaintiff's complaint, Plaintiff did not believe he required psychotropic and/or antipsychotic medication, but that those medications had nevertheless been forcibly administered based on the medical opinion of a psychiatrist. Indeed, some of his allegations in his complaint concern his request that he be taken off the forcible medication and defendants' refusal to do so. For example, Plaintiff alleges "Pl. asked Def. [Vu] whether Pl. could be taken off of PC 2602 because Pl. had been compliant with and never refused his medication and had been having side effects." However, Defendant Vu responded "Well, you should come out and talk [at talk therapy sessions]. There's nothing I can do since you didn't come out." (*Id.* at 9). This background regarding Plaintiff's PC 2602 order and the allegations in Plaintiff's complaint thus further show a difference of opinion between Plaintiff and the prison mental health professionals as to

1  his mental health treatment, rather than deliberate indifference to Plaintiff's serious medical
2  needs.

3  Plaintiff's complaint also fails to state a claim for deliberate indifference to his serious
4  medical needs because it indicates that the mental health defendants attempted to treat mental
5  health needs.  Again, Plaintiff is receiving psychotropic and/or antipsychotic medications under
6  the PC 2602 order.  Plaintiff also alleges that he was placed in CSP-SOR's Crisis Unit for 30-
7  day in-patient admission in January 2023 (ECF No. 1 at 4), then again overnight in May 2023
8  (*id.* at 11), and that "Def. was on notice of Pl.'s multiple Crisis Unit admissions over mental
9  health episodes . . . ." (*id.* at 20).  Thus, according to Plaintiff's complaint, he was frequently
10 placed in the prison's Crisis Unit to address his mental health needs.  Plaintiff also alleges that
11 mental health professionals frequently came to Plaintiff's cell for "scheduled weekly treatment
12 meeting[s]." (*Id.* at 6).  His clinicians also repeatedly advised him to come out of his cell to
13 attend therapy. (*Id.*).  Thus, Plaintiff's allegations demonstrate that he was receiving treatment
14 from Defendants for his mental health needs during this time period, but that Plaintiff disagreed
15 with their form of treatment.

16 Plaintiff's allegations also do not state a cognizable claim for deliberate indifference to
17 serious medical needs because they fail to identify any specific treatment that Plaintiff believes
18 was medically necessary yet was not provided to him.  Besides moving to a safer cell, which is
19 addressed above in connection with Plaintiff's first cause of action, Plaintiff's complaint does
20 not describe any specific type of treatment that Plaintiff believes should have been provided to
21 address him cutting himself with broken glass in his cell.  Instead, Plaintiff's complaint
22 contains general assertions that Defendants should have done more, such as that they "failed to
23 result in adequately treating Plaintiff's serious mental illnesses," "denied Pl. constitutionally
24 adequate medical/mental health treatment," failed to "transfer Pl. to a facility/area that could
25 adequately provide the suchlike," and failed to place Plaintiff "at a higher level of
26 care/treatment."  But such general allegations that Defendants failed to provide adequate
27 treatment, without pointing to any specific treatment that was medically necessary, fail to state
28 a claim for deliberate indifference to serious medical needs.

16

It is true that Plaintiff's complaint at times alleges that Defendants were not following CDCR policies in their treatment of Plaintiff. For example, Plaintiff alleges that "CSP-COR mental health staff [e.g., Defs. T. Sparks, C. Angel, D. Watson, Does] had not accepted recommendations and were not following CDCR/state policies guiding how to properly address symptoms like what Pl. experiences." (ECF No. 1 at 8). However, Plaintiff does not describe any specific policy, treatment that had been recommended, nor any basis for such a recommendation. Similarly, Plaintiff's complaint alleges that a licensed clinical social worker named L. Lulow once stated that, in his opinion, "Pl. needed a higher level of care, more intensive mental health treatment." (*Id.* at 10). But, again, there is no description of a specific treatment involved in such "higher level of care," or why it was required to treat Plaintiff's medical needs.

Thus, the Court finds that Plaintiff's complaint fails to state a cognizable claim for deliberate indifference to serious medical needs. The Court will recommend that Plaintiff's claim for deliberate indifference to serious medical needs be dismissed.[4]

### IV.  CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that it states an Eighth Amendment claim for unconstitutional conditions of confinement against Defendants Aranda, McKinney, and Johnson. The Court finds that Plaintiff fails to state any other cognizable claim against any other defendant.

Based on the foregoing, **IT IS RECOMMENDED** that:

1. Plaintiff's Eighth Amendment claim for unconstitutional conditions of confinement against Defendants Aranda, McKinney, and Johnson should proceed past the screening stage.
2. All other claims be dismissed.

---

[4] In the Court's screening order, it stated that "if Plaintiff chooses to amend his complaint and wishes to assert such a claim, he should describe specifically what treatment he believes Defendants should have provided to him, why such treatment was medically necessary to treat his medical needs, as well as any facts indicating that any defendant believed he needed that form of treatment but purposefully failed to provide it to him." However, Plaintiff did not file an amended complaint or indicate a desire to do so.

17

1   These findings and recommendations are submitted to the United States district judge
2 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty
3 (30) days after being served with these findings and recommendations, Plaintiff may file
4 written objections with the Court. Such a document should be captioned "Objections to
5 Magistrate Judge's Findings and Recommendations."
6   Plaintiff is advised that failure to file objections within the specified time may result in
7 the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)
8 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 14, 2025**          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE