UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE OSUNA,<br><br>          Plaintiff,<br><br>  v.<br><br>T. CAMPBELL, *et al.*,<br><br>          Defendants | Case No. 1:24-cv-01156-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIM FOR UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT AGAINST DEFENDANTS ARANDA, CAMPBELL, MCKINNEY, MORENO, SPARKS, AND JOHNSON AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS<br><br>(ECF No. 14) |

Plaintiff Jamie Osuna is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff claims that he broke the windows in his prison cell and used the glass to harm himself over a period of months, yet defendants at Corcoran State Prison failed to move him to another cell or provide him with adequate mental health care.

The Court has reviewed Plaintiff's first amended complaint, and for the reasons described below, the Court finds that Plaintiff's claim for unconstitutional conditions of confinement in violation of the Eighth Amendment against Defendants Aranda, Campbell, McKinney, Moreno, Sparks, and Johnson should proceed past screening. Thus, the Court will

1

recommend that these claims proceed and that all other claims and Defendants be dismissed without further leave to amend.

Plaintiff has thirty days from the date of service of these findings and recommendations to file any objections.

## I.    BACKGROUND

Plaintiff filed the complaint commencing this action on September 30, 2024.  (ECF No. 1).  Plaintiff's complaint contained two Eighth Amendment claims, one for unconstitutional conditions of confinement and one for deliberate indifference to serious medical needs.

On April 21, 2025, this Court screened Plaintiff's complaint and found that the case should proceed only on Plaintiff's conditions of confinement claim against Defendant Aranda, McKinney, and Johnson.  (ECF No. 11).  Plaintiff was given leave to amend his complaint.

On May 12, 2025, Plaintiff filed objections to the Screening Order and stated he wanted further review of his initial complaint.  (ECF No. 12).  This Court then issued Findings and Recommendations that this case proceed on Plaintiff's Eighth Amendment claim for unconstitutional conditions of confinement against Defendants Aranda, McKinney, and Johnson and that all other claims be dismissed for failure to state a claim.  (ECF No. 13).

On June 4, 2025, Plaintiff filed an amended complaint.  (ECF No. 14).  This Court vacated its Findings and Recommendations and stated it would screen Plaintiff's amended complaint.  (ECF No. 15).

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case if it is frivolous or

malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Pleadings filed by *pro se* plaintiff are to be liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III.    SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff is a state prisoner incarcerated at California State Prison, Corcoran ("CSP-COR").  (ECF No. 14, at p. 1).  Plaintiff names as Defendants the following individuals in their individual and official capacities (*id.* at pp. 2–3):

1) T. Campbell, the Warden of California State Prison, Corcoran;

2) B. McKinney, the Associate Warden of California State Prison, Corcoran;

3) Enrique Moreno, a Correctional Lieutenant;

4) Tiffany Sparks-Mendoza, a Mental Health Supervisor; CA license# 77726, Board of Behavioral Sciences;

5) Scott Harris, CSP-COR's Chief of Mental Health (CMH); CA license # 22416, Board of Psychology;

6) Alonzo Aranda, a Correctional Lieutenant;

7) Daniel Watson, a licensed clinical social worker/clinician; CA license # 81005, Board of Behavioral Sciences;

8) Andrew Johnson, a Captain;

9) Dr. Alan Vu, a medical doctor and staff psychiatrist; CA license# 76543;

10) Sara Gates, CDCR's Chief of medical/mental health care, Sacramento, CA;

11) Clint J. Soares, Chief Psychologist; CA license # 18782, CA Board of Psychology;

12) Eric McDaniel, CEA;[1]

13) Michael Whittaker, CSP-COR's Health Care CEO;

---

[1] Plaintiff does not explain this abbreviation.

14)    John/Jane Does, 1–TBD, CDCR personnel.[2]

Plaintiff alleges that he has been under continual PC 2602[3] orders "since around 2020 for serious mental illnesses, being deemed a danger to self/others and gravely disabled." (ECF No. 14, at p. 3). Plaintiff alleges that on or around January 10, 2023, he was discharged from CSP-COR's Crisis Unit after a roughly 30-day in-patient admission for "displaying dangerous symptoms/side effects from PC 2602 forced psychotropic, antipsychotic medications." (*Id.*) Plaintiff alleges that on January 15, 2023, he broke his cell widow so that sharp glass shards flew everywhere. Plaintiff was issued a rules violation report for this incident. That same day, Plaintiff began cutting himself with glass shards from the broken window.

Plaintiff alleges that for about four months he was subjected to unsafe conditions of confinement in his cell because he broke two windows in his cell, yet Defendants failed to replace them or move him to another cell. Plaintiff also claims that he did not receive the mental health care he needed.

Plaintiff's first amended complaint contains two causes of action for: (1) unconstitutional conditions of confinement in violation of the Eighth Amendment and (2) deliberate indifference to serious medical needs in violation of the Eighth Amendment.

## IV.    ANALYSIS

### A.    42 U.S.C. § 1983 Legal Standards

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[2] In his initial complaint, Plaintiff included Carina Angel, a licensed clinical social worker/clinician, as a defendant, but Plaintiff's amended complaint no longer names Carina Angel as a defendant.

[3] California Penal Code § 2602 concerns when a prisoner may be treated with psychiatric medication without his or her prior informed consent.

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. at 743-44. This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation.") (citation omitted).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

\\\

\\\

**B.    Conditions of Confinement**

Plaintiff's first cause of action is for unconstitutional conditions of confinement in violation of the Eighth Amendment based on his allegations that he was left in his cell after he broke his cell windows and used the glass to cut himself.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (Prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'").  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996) ("every injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials").  However, "prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

"An Eighth Amendment claim against a prison official must meet two requirements, one subjective and one objective." *Osolinski*, 92 F.3d at 937.  "First, the deprivation must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (citations omitted).  Second, "prison officials must have a sufficiently culpable state of mind," which for conditions-of-confinement claims, "is one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted).  A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In support of his conditions of confinement claim, Plaintiff alleges that around January 15, 2023, Plaintiff broke his cell window and began cutting himself with glass shards from the broken window.  (ECF No. 14, at p. 3).

On January 28, 2023, Plaintiff alleges he continued to cut himself, and the cuts on his legs and arms, and the blood and bloody rags/debris were visible to custody staff.  (ECF No. 14, at p. 3).  Between 11 am to 12:45 pm, Unit Officer F. Camacho—who is not named as a defendant—was walking the tier when she saw Plaintiff's cell door open and noticed the blood. She said, "Is that blood? Is anybody gonna clean this shit up?"  (*Id.* at p. 4).  F. Camacho then called to Unit Officer R. Muhammed— who is also not a defendant—to look at the floor and the blood that was soaked over that concrete floor.

Plaintiff alleges that he also broke the other cell window and began using the bigger shards of glass to self-mutilate.  (ECF No. 14, at p. 8).

During a counseling session, Plaintiff told Defendant Watson about the broken window and "glass everywhere" in his cell.  (ECF No. 14, at p. 5).  Defendant Watson informed Plaintiff that he would tell his supervisors about the broken window and blood.  (*Id.*)

Plaintiff alleges that in May of 2023, because of his cutting and self-harm, he was taken out of his cell, placed in the Crisis Unit for around thirteen hours, and discharged the next morning.  (ECF No. 14, at pp. 9-10).  Plaintiff was then placed back in the same cell with the broken windows, bloody toilet paper rolls, and bloody, ripped up towels still on the floor. During that same day, Plaintiff began to decompensate and used the glass shards to cut himself again without further treatment or intervention.  (*Id*. at p. 10).

For the purposes of screening, the Court finds that Plaintiff has sufficiently alleged that the condition of his cell was unsafe and unsanitary.

The Court next addresses whether Plaintiff has sufficiently alleged that any named Defendants acted with deliberate indifference to this condition.  Plaintiff's first cause of action names the following Defendants for this claim: A. Aranda, T. Campbell, B. McKinney, E. Moreno, T. Sparks, and A. Johnson.  Thus, the Court looks to the relevant factual allegations in Plaintiff's first amended complaint related to these Defendants.

First, regarding Defendant A. Aranda, Plaintiff alleges in his factual statement that "Def. A. Aranda refused Pl's request to move to another cell."  (ECF No. 14, at p. 10).  In Plaintiff's first cause of action, Plaintiff also states that Aranda "was one of the supervisors

7

who ordered that Pl. not be moved for any reason from his cell." (*Id.* at p. 11).  Although Plaintiff's allegations about Defendant Aranda are brief and lack information regarding how Plaintiff is aware of Defendant Aranda's alleged direction to keep Plaintiff in his cell, given that Plaintiff alleged in his factual statement that Defendant Aranda refused Plaintiff's request to move to another cell, for the purposes of screening, the Court will permit Plaintiff's claim for unconstitutional conditions of confinement to proceed against Defendant Aranda.

Next, the Court turns to Plaintiff's allegations regarding Defendant Campbell.  Plaintiff alleges as follows: "Def. T. Campbell was informed weekly when she would be in the unit running ICC by officers about Pl.'s repeated, consistent injuries he suffered on a daily basis and how the window was contributing to the injuries and the Pl. should be moved.  Def. ignored these recommendations and stated the cell was a specially made assigned cell for Pl. and that Pl. had to stay there.  Def. refused to red line the cell and fix the window.  Def. was made aware daily that the Pl. had blood all over his cell floor, caking/stacking up and unsanitary rags and toilet paper rolls and that the Pl. had injuries.  Def. refused to provide treatment even in a medical emergency response, such as self-injurious behavior." (ECF No. 14, at p. 11).

The Court finds that Plaintiff has alleged facts sufficient to state a claim for unconstitutional conditions of confinement against Defendant Campbell.

Regarding McKinney and Johnson, Plaintiff alleges that around the beginning of April 2023, C. Angel, an associate social worker, met with Plaintiff in Plaintiff's cell, which still had broken glass and blood "everywhere in the cell." (ECF No. 14, at p. 6).  Plaintiff alleges he informed C. Angel about the broken glass and unsafe living conditions, but C. Angel told him that Defendants Johnson, Associate Warden McKinney, "and higher ups did not want to move [Plaintiff] to a safer location." (*Id.* at p. 7).

The Court finds that these allegations are sufficient to state a claim against Defendants Johnson and McKinney for unconstitutional conditions of confinement.

Regarding Defendant E. Moreno, Plaintiff alleges that on or around May 5, 2023, Defendant E. Moreno approached Plaintiff's cell and took Plaintiff to the Crisis Unit.  Moreno asked Plaintiff how long he had the two broken windows. (ECF No. 14, at p. 9).  Plaintiff

responded, "For around four months," and Moreno stated, "Pl.'s cell should have been red lined, tagged, closed off." (*Id.*) Moreno stated, "For now you have to go to Crisis. We're going to pull you out and [Unit Officer I.] Torres and [Unit Officer R.] Muhammad while you're gone will clean your cell and I promise you'll be out by the morning." (*Id.* at p. 10). After Plaintiff was taken to the Crisis Unit, Plaintiff alleges that Moreno told Pl. that the AW [McKinney] said, "You'll be discharged out by the morning." (*Id.*) Plaintiff alleges that he was nevertheless placed back in the same cell the next morning.

Plaintiff further alleges that "Def. [Moreno] failed on 05/05/2023 to redline and close down Pl.' s cell when PL was escorted to Crisis Unit. Other officers, such as Torres, Muhammed, cleaned some of the blood up, but the Def. still allowed afterwards for PL 's cell to be open and allowed PL to return to the same location, in which PL suffered further physical injuries and unnecessary, wanton infliction of pain." (ECF No. 14 at p. 13).

The Court finds that Plaintiff has alleged sufficient facts to state a claim against Defendant Moreno for unconstitutional conditions of confinement.

Regarding Defendant Sparks, Plaintiff alleges that around February 1, 2023, Defendant Sparks asked Plaintiff if he was cutting and requested to see the wounds. (ECF No. 14, at p. 4). Plaintiff alleges he "showed his right arm with a 7-inch cut open into the muscle. Def. [Sparks] opened her eyes wide, left, returned with a psych tech who said, "Wow" in Spanish at seeing Pl.' s arm. They documented Pl.' s injuries." (*Id.*) Plaintiff alleges Defendant Sparks told Plaintiff to promise not to self-harm anymore and did not have officers pull Plaintiff out to retrieve the cutting instruments. (*Id.* at p. 14.)

The Court finds that Plaintiff's allegations are sufficient to allege a claim against Defendant Sparks for unconstitutional conditions of confinement.

In conclusion, the Court finds that Plaintiff's first amended complaint sufficiently alleges a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment against Defendants Aranda, Campbell, McKinney, Moreno, Sparks, and Johnson.

\\\

\\\

9

### C.     Deliberate Indifference to Serious Mental Health/Medical Needs

Plaintiff's second cause of action is for deliberate indifference to his serious mental health/medical needs in violation of the Eighth Amendment.  Plaintiff alleges that Defendants Sparks, Watson, Harris, Gates, Vu, McDaniel, Soares, and Whittaker, were aware that Plaintiff needed additional mental health and/or medical treatment yet failed to provide him with such treatment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent."  *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety."  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett*, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A mere difference in medical opinion is "insufficient, as a matter of law, to establish deliberate indifference.'"  *Toguchi,* 391 F.3d at 1058.  "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"

*Id.* Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The Court has closely reviewed the allegations in the Factual Statement of Plaintiff's First Amended Complaint to determine if Plaintiff has alleged that any of the defendants acted with deliberate indifference to his mental health needs, with these legal standards in mind. The following allegations in that factual statement are relevant to this issue:

Plaintiff alleges that after he was discharged from CSP-COR's Crisis Unit after a 30-day in-patient admission, on January 10, 2023, Plaintiff was rehoused/assigned to CSP-SOR SHU/RHU. (ECF No. 14, at p. 3). Five days later, Plaintiff broke his own cell window so that glass shards flew everywhere. Plaintiff began cutting himself with the glass shards from the broken window.

Plaintiff then describes his interactions with various mental health professionals, including Defendants, over the next several months. For example, in February 2024, Defendant D. Watson approached Plaintiff's cell for a scheduled weekly treatment meeting. Plaintiff informed Defendant that he was having side effects/symptoms of Plaintiff's mental illnesses and medications. Plaintiff reminded Defendant Watson of the "safety claimers" in Plaintiff's file regarding dangerous side effects of his antipsychotic, psychotropic medications. (ECF No. 14, at p. 4). Plaintiff told Defendant Watson that he was still blacking out and finding himself injured with glass on his arms and bottoms of his feet. Defendant Watson responded "Well, you can learn how to change your behavior. If you come out and talk [at talk therapy], it will be something." (*Id.* at p. 5). Plaintiff responded that these side effects are not behavior issues—they are permanent side effects like tardive dyskinesia (involuntary muscle movement). Plaintiff stated that he should be in a safer cell or treatment facility because of the broken glass everywhere, that CSP-COR isn't equipped to keep Plaintiff safe and is unable to help Plaintiff manage side effects and symptoms. Defendant Watson responded that he "didn't agree" with Plaintiff's diagnosis. (*Id.*).

1    Similarly, Plaintiff alleges that C. Angel, Plaintiff's newly assigned clinician, visited

2    Plaintiff at his cell in April of 2023 and saw that Plaintiff's window was broken and Plaintiff

3    had visible injuries.  Plaintiff informed C. Angel of Plaintiff's serious mental illness diagnoses

4    (unspecified schizophrenia, psychotic disorder, mood disorder, PTSD), which a qualified

5    neuropsychologist and CDCR-top specialist determined via extensive testing on Plaintiff.

6    (ECF No. 14, at p. 6).  Plaintiff told C. Angel that Plaintiff had been under continual PC 2602

7    orders for involuntary medication, and that from these medications Plaintiff was experiencing

8    severe side effects.  C. Angel replied that yes, Plaintiff was on antipsychotics, and Plaintiff was

9    in a bad situation by harming himself, but that Plaintiff was responsible for Plaintiff's

10   behaviors and Plaintiff should admit this.  C. Angel stated, "Well I know, I know, but you at

11   least, if something, can come to your one-on-ones [talk therapies]."  (*Id.*)  Plaintiff responded

12   that treatment talk therapy does not fix chemical side effects that Plaintiff was having, and it

13   doesn't stop the injuries that were out of Plaintiff's control.

14        Plaintiff makes similar allegations as to other mental health professional defendants,

15   generally alleging that they saw Plaintiff in his cell with his broken windows and injuries from

16   cutting himself, encouraged Plaintiff to come out of his cell for talk therapy, but otherwise did

17   not provide sufficient mental health treatment for Plaintiff's self-harming behavior.

18        Elsewhere, Plaintiff alleges that "[a]round 02/2023-05/2025, meetings were held to

19   raise Pl's level of care and brought to the attention of Defs. S. Gate, E. McDaniel, C. Soares, S.

20   Harris that they wanted to raise or had raised Pl.'s level of care. Pl. was harming self/others and

21   COs (Torres, Resendes, Balanga) filed 128-B Chronos stating Pl. was self-harming all of the

22   time and had blood everywhere and was exhibiting bizarre, unusual behavior. Defs. S. Gates, E.

23   McDaniel, C. Soares, S. Harris had stated to Pl.'s clinician and Treatment Team that Pl. was to

24   stay in that unit and cell, excluded from treatment programs.  The[y] then notified Pl. that

25   Defs., supervisors said that no, Pl. could not be moved and was excluded from treatment."

26   (ECF No. 14, at p. 8).

27

28

The Court finds that these factual allegations are insufficient to state a claim for deliberate indifference to medical needs.[4]

Plaintiff's own allegations in the factual statement of his amended complaint demonstrate that the mental health Defendants disagreed with Plaintiff's proposed diagnosis and treatment, rather than that they purposefully withheld treatment they believed that Plaintiff needed.  Plaintiff's first amended complaint repeatedly describes how the mental health defendants disagreed with Plaintiff's assessment of his mental health treatment needs.  For example, Plaintiff alleges that Defendant Watson "didn't agree" with Plaintiff's diagnosis and instead believed that Plaintiff had to "learn how to change your behavior.  If you come out and talk [at talk therapy] it will be something."  (ECF No. 15, at p. 5).  Similarly, Plaintiff alleges that Defendant Watson told Plaintiff that Defendant Watson "didn't believe in side effects" or the dangers/hazards, and that there was nothing Defendant Watson could do but talk to Plaintiff.  (Id.).  These allegations show a difference of opinion as to Plaintiff's diagnosis and treatment, rather than deliberate indifference to Plaintiff's serious medical needs by purposely withholding treatment that the mental health defendants believed was necessary.

Plaintiff also alleges that Defendants Gates, McDaniel, Soares and Harris excluded Plaintiff from certain treatment.  However, nothing in Plaintiff's allegations show that they believed he should receive a higher level of care.  On the contrary, Plaintiff alleges that "the warden wanted/required Pl. to be in that specific cell because of how the cell is designed."  (ECF No. 14, at p. 9).

Plaintiff's allegations regarding his PC 2602 orders further demonstrate that the mental health Defendants at CSP-COR disagreed with Plaintiff about his mental health treatment.  Plaintiff's first amended complaint alleges that he has been under continual PC 2602 orders

---

[4] To the extent Plaintiff is claiming that Defendants should have transferred him to a different cell, the Court has addressed that claim above, in the context of Plaintiff's cause of action for unconstitutional conditions of confinement.  Plaintiff does not allege that transfer to a cleaner cell without broken windows is a medical treatment needed to address Plaintiff's underlying medical or mental health impairments.  Rather, transferring Plaintiff to another cell is a way to address Plaintiff's allegedly unsafe conditions of confinement.

since around 2020 for serious mental illness.  That statute governs when an inmate can be forcibly treated with medication and states, in part:

> (b) If a psychiatrist determines that an inmate should be treated with psychiatric medication, but the inmate does not consent, the inmate may be involuntarily treated with the medication. Treatment may be given on either a nonemergency basis as provided in subdivision (c), or on an emergency or interim basis as provided in subdivision (d).

> (c) The Department of Corrections and Rehabilitation may seek to initiate involuntary medication on a nonemergency basis only if all of the following conditions have been met:

> > (1) A psychiatrist has determined that the inmate has a serious mental disorder.

> > (2) A psychiatrist has determined that, as a result of that mental disorder, the inmate is gravely disabled and does not have the capacity to refuse treatment with psychiatric medications or is a danger to self or others.

> > (3) A psychiatrist has prescribed one or more psychiatric medications for the treatment of the inmate's disorder, has considered the risks, benefits, and treatment alternatives to involuntary medication, and has determined that the treatment alternatives to involuntary medication are unlikely to meet the needs of the patient.

> > (4) The inmate has been advised of the risks and benefits of, and treatment alternatives to, the psychiatric medication and refuses or is unable to consent to the administration of the medication.

> > (5) The inmate is provided a hearing before an administrative law judge.

Cal. Penal Code § 2602.

In other words, before and at the time of the events in Plaintiff's first amended complaint, Plaintiff did not believe he required psychotropic and/or antipsychotic medication, but that those medications had nevertheless been forcibly administered based on the medical opinion of a psychiatrist, pursuant to a court order.  Indeed, some of his allegations in his amended complaint concern his request that he be taken off the forcible medication and

Defendants' refusal to do so. For example, Plaintiff alleges "Pl. asked Def. [Vu] whether Pl. could be taken off of PC 2602 because Pl. had been compliant with and never refused his medication and had been having side effects." (ECF No. 14, at p. 7). However, Defendant Vu responded "Well, you should come out and talk [at talk therapy sessions]. There's nothing I can do since you didn't come out." (*Id.*). This background regarding Plaintiff's PC 2602 order and the allegations in Plaintiff's first amended complaint thus further show a difference of opinion between Plaintiff and the prison mental health professionals as to his mental health treatment rather than deliberate indifference to Plaintiff's serious medical needs.

The factual allegations in Plaintiff's First Amended Complaint also show that Plaintiff was receiving treatment for his mental health needs, although he disagreed with that treatment. Again, Plaintiff is receiving psychotropic and/or antipsychotic medications under the PC 2602 order. Plaintiff also alleges that he was placed in CSP-SOR's Crisis Unit for 30-day in-patient admission in January 2023 (ECF No. 14, at p. 3), then again overnight in May 2023 (*id.* at p. 9). Plaintiff also alleges that mental health professionals frequently came to Plaintiff's cell for "weekly treatment meeting[s]." (*Id.* at p. 4). His clinicians also repeatedly advised him to come out of his cell to attend therapy. Thus, Plaintiff's allegations demonstrate that he was receiving treatment from Defendants for his mental health needs during this time period, but that Plaintiff disagreed with their form of treatment.

Plaintiff's first amended complaint also fails to identify any specific treatment that Plaintiff believes was medically necessary yet was not provided to him. Besides moving to a safer cell, which is addressed above in connection with Plaintiff's first cause of action, Plaintiff's first amended complaint does not describe any specific type of treatment that Plaintiff believes should have been provided to address him cutting himself with broken glass in his cell. It is true that Plaintiff's first amended complaint at times alleges that Defendants were not following CDCR policies in their treatment of Plaintiff. For example, Plaintiff alleges that "CSP-COR mental health staff had not accepted recommendations and were not following CDCR/state policies guiding how to properly address symptoms like what Pl. experiences." (ECF No. 14, at p. 4). However, Plaintiff does not describe any specific policy, treatment that

15

had been recommended, nor any basis for such a recommendation. Similarly, Plaintiff's amended complaint alleges that a licensed clinical social worker named L. Lulow once stated that, in his opinion, "Pl. needed a higher level of care, more intensive mental health treatment." (*Id.* at p. 7). But, again, there is no description of a specific treatment involved in such "higher level of care," or why it was required to treat Plaintiff's medical, mental health, needs.

The Court has also considered Plaintiff's statements in Claim 2, rather than the factual statement, where Plaintiff states that the acts and omissions of each defendant shows that they "knew of and disregarded an excessive risk of serious harm to inmates' health and safety and failed to carry out psychotropic medical orders." (ECF No. 14, p. 16). In that portion of Plaintiff's First Amended Complaint, Plaintiff repeatedly asserts that defendants violated medical orders. For example, Plaintiff includes the following language verbatim in each of his descriptions as to why Defendant Sparks, D. Watson, Harris, Gates were deliberate indifferent to his serious medical needs:

> Def failed to act on medical recommendations by order from a petitioned administrative judge for CDCR who also ordered that Pl. must be monitored on periodic basis to determine if the drugs 1.) were causing any harmful side effects 2) if the drugs were working the way the psychiatrist intends for it to work. Def. knows <u>Coleman v. Wilson</u>, <u>Coleman v. Newsom</u> court orders, and that adequate prison mental health care requires administration of psychotropic medications only with supervision and periodic evaluation. Def. has a constitutional duty to adequately monitor inmates' prescription psychotropic medication whether they require such monitoring or not. Def. was aware of the facts which was detailed information about the danger Pl. was in which the inference was drawn that a substantial risk of serious harm existed and Def. failed to embrace a policy or take other reasonable steps which could have prevented the harm and continued harm.

(ECF No. 14, at p. 17, 18, 19, 20). However, there are no factual allegations about any "order from a petitioned administrative judge for CDCR," nor any specific factual allegations as to how each of these defendants violated such an order. To the extent Plaintiff is alleging that each of these defendants were deliberately indifference by failing to monitor him, he fails to include any factual allegations indicating that these defendants were responsible for monitoring him. Moreover, his factual allegations repeatedly describe mental health professionals observing and interacting with him, as described above. Instead, Plaintiff's claim that these

defendants were deliberately indifferent because they ignored a court order about his care appears to be a repeated conclusory allegation, unsupported by specific facts.

Thus, the Court finds that Plaintiff's first amended complaint fails to state a cognizable claim for deliberate indifference to serious medical/mental health needs.

## V.    CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's complaint and finds that it states an Eighth Amendment claim for unconstitutional conditions of confinement against Defendants Aranda, Campbell, McKinney, Moreno, Sparks, and Johnson. The Court finds that Plaintiff fails to state any other cognizable claim against any other Defendant.

The Court will recommend that all other claims and Defendants be dismissed without further leave to amend.  Notably, the initial screening order addressed materially similar allegations, advised Plaintiff how they were deficient, provided applicable legal standards, and granted him leave to amend.  Plaintiff filed an amended complaint with the benefit of those standards.  Thus further leave to amend would be futile.

Accordingly, IT IS RECOMMENDED as follows:

1.    This case proceeds only against Defendants Aranda, Campbell, McKinney, Moreno, Sparks, and Johnson based on Plaintiff's claim for unconstitutional conditions of confinement in violation of the Eighth Amendment.

2.    All other claims and Defendants be dismissed without further leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\

Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 29, 2025**              /s/ *Erica P. Grosjean*
                                        UNITED STATES MAGISTRATE JUDGE