## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamie Osuna, CDCR #BD0868<br>PO Box 3476<br>Corcoran, CA 93212<br>　Pl.,<br><br>　　　　against<br><br>T. Campbell, B. McKinney, A. Johnson, T. Sparks, D. Watson, A. Aranda, E. Moreno, S. Gates, S. Harris, A. Aranda, A. Johnson, A. Vu, E. McDaniel, M. Whittaker, C. Soares, et al<br>　Defs. | Docket No.: 1:24-cv-01156-JLT-EPG<br><br>**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS (ECF No. 16)**<br> |

## I. INTRODUCTION

From around January 15 through around May 18, 2023, Plaintiff experienced a severe decline in mental health, with escalating psychiatric symptoms, repeated self-injury, and psychiatric decompensation. For months, Plaintiff remained in a cell with two broken windows and other hazardous items, using shards of glass and other objects to cut himself. Each time Plaintiff left the cell, there were bloody rags and other visible evidence of injury, yet weeks and months passed before any intervention occurred.

During this entire period, Plaintiff repeatedly told his clinician Watson and other treatment staff that he was not feeling well, was self-harming, and was experiencing psychiatric symptoms. He also showed Defendants open, actively bleeding wounds. Still, Defendants refused to report or treat these injuries, dismissing Plaintiff's condition on the grounds that he was "not down" in his file as having a diagnosis of mental illness—even though an Administrative Law Judge had issued a PC 2602 order based on schizophrenia and related psychotic disorders. Defendants further told Plaintiff that if he refused to take his court-ordered medications, he would be cell extracted by force.

While refusing to treat that diagnosis, Defendants simultaneously required Plaintiff to take

1

antipsychotic and psychotropic medications alone, without supervision or monitoring for dangerous side effects. Yet CDCR's own PC 2602 procedures, as well as federal law (*Washington v. Harper*, 494 U.S. 210 (1990)), recognize that involuntary medication may only occur where an inmate is diagnosed with serious mental illness, is experiencing symptoms of psychosis or dangerousness (DTS/DTO), or is gravely disabled. Indeed, the yearly PC 2602 renewal orders state that Plaintiff is DTS/DTO and gravely disabled.

Nevertheless, Defendants refused to treat Plaintiff for that disorder, contradicted *Coleman v. Newsom* mental health standards, and instead held Plaintiff personally accountable for behaviors arising from untreated psychosis. Even when reports documented that Plaintiff's rules violations were due to an underlying psychotic process, Defendants denied him treatment and classified him as "not mentally ill."

Further, Defendants used forced medication as retaliation. At the time of Plaintiff's PC 2602 hearing, the psychiatrist reported her supervisors told her to continue the order—despite the fact that the decision must be based on her independent evaluation and Plaintiff's history, not supervisor directives.

Harris, the Chief of Mental Health, rejected Plaintiff's grievances for higher levels of care, falsely asserting that nothing was wrong, that Plaintiff had no mental illness, and that he was at the correct level of care. When clinician Lulow granted Plaintiff's grievance for higher level of care, Harris intervened directly—sending an email instructing Lulow to change his decision, later issuing a reversal himself, and subsequently having Lulow transferred to another yard. Lulow had already told Plaintiff he should not be left self-harming in a dark cell, and confided that supervisors had said Plaintiff was "evil and evil cannot be cured." Similarly, when correctional officers reported Plaintiff needed higher-level care, another clinician agreed—but no action was taken.

Defendants Harris, McDaniel, Whittaker, Gates, Vu, Soares, and Watson—all directly involved in Plaintiff's treatment planning—personally obstructed higher care; ordered Plaintiff kept in the same cell, reversed a bed move after Plaintiff had been packed for transfer, and continued forced medication while refusing to treat his diagnosis.

2

The Magistrate Judge's conclusion that these facts reflect a "difference of opinion" is erroneous. Plaintiff's allegations demonstrate Defendants were confronted with life-threatening injuries, visible evidence of ongoing self-harm, documented PC 2602 orders requiring treatment, and repeated pleas for help. Ignoring open wounds and psychiatric decompensation for months is deliberate indifference, not medical disagreement. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Moreover, courts have recognized that mentally ill prisoners cannot be expected to reliably self-advocate or report risks; prison officials bear the constitutional duty to respond once risks are apparent. *Coleman v. Wilson*, 912 F. Supp. 1282, 1298–1301 (E.D. Cal. 1995); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

## II. LEGAL STANDARDS

- Deliberate Indifference: Officials violate the Eighth Amendment when they know of and disregard excessive risks. *Farmer*, 511 U.S. at 837.
- Medical Care: Denial of treatment for serious medical needs is cruel and unusual punishment. *Estelle*, 429 U.S. at 104–05.
- Medically Unacceptable Treatment: Disagreement in treatment is actionable when the chosen course is medically unacceptable and taken in conscious disregard. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012).
- Supervisory Liability: Supervisors may be liable if they knew of violations and failed to act. *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011).
- Mentally Ill Prisoners: Officials cannot shift responsibility to mentally ill inmates to self-report risks. *Coleman*, 912 F. Supp. at 1298–1301; *Doty*, 37 F.3d at 546.
- Pro Se Pleadings: Must be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (2010).
- Doe Defendants: Permitted where identities are unknown at filing. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).
- First Amendment: Retaliation or obstruction of care in response to complaints or lawsuits violates the First Amendment. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

## III. OBJECTIONS TO DISMISSED DEFENDANTS

D. Watson (Clinician)

- Allegations: Watson regularly met with Plaintiff while Plaintiff was in a cell with broken windows and shards of glass. Plaintiff told Watson he was self-harming, "not feeling good," and experiencing psychiatric symptoms. Plaintiff showed Watson open bleeding wounds and there were bloody rags visible outside his cell. Plaintiff reported ongoing blackouts and injuries from forced medications.
- Findings: The Magistrate Judge dismissed claims against Watson as a mere difference of opinion.
- Objection: Watson did not just disagree about treatment; he ignored life-threatening conditions and injuries. Under *Estelle v. Gamble*, 429 U.S. 97 (1976), ignoring serious wounds constitutes deliberate indifference. Under *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), prison staff violate the Eighth Amendment when they deny care for obvious, serious injuries.
- Further Contradiction: Watson dismissed Plaintiff's symptoms because Plaintiff's file falsely stated he had "no mental illness," even though a PC 2602 order diagnosed schizophrenia and required treatment. Refusing to treat a court-validated diagnosis while enforcing forced medication shows deliberate indifference, not medical judgment.

B. Vu (Psychiatrist)

- Allegations: Vu administered antipsychotic medications pursuant to PC 2602. Plaintiff repeatedly reported serious side effects—blackouts, tardive dyskinesia, psychotic deterioration—yet Vu continued the same medications without change. Plaintiff was required to take these powerful drugs alone, without supervision or monitoring for dangerous effects.
- Findings: Dismissed as conclusory.
- Objection: Continuing a treatment known to cause dangerous side effects without modification is "medically unacceptable." *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012). *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) confirms liability arises where doctors choose treatment for non-medical reasons. Vu's refusal to treat Plaintiff's

4

1  underlying schizophrenia diagnosis while forcing medication under that same diagnosis
2  shows contradiction and deliberate indifference.

C. Harris (Chief of Mental Health)

- Allegations: Harris initiated Plaintiff's PC 2602 petition. He simultaneously refused to list Plaintiff as mentally ill in his file, even though the Administrative Judge found schizophrenia. Harris personally reversed a grievance that clinician Lulow had granted, which recommended higher-level care. He sent an email instructing Lulow to change his decision, had transferred Lulow, and told others Plaintiff was "evil" and "evil cannot be cured." Harris also rejected Plaintiff's grievances by falsely asserting that Plaintiff was fine, had no mental illness, and was at the correct level of care. Harris also participated in reversing a bed move after Plaintiff had been packed and provided bags to transfer, keeping him in the same harmful conditions.
- Findings: Dismissed for lack of specificity.
- Objection: Harris had direct authority and knowledge. Under *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011), supervisors are liable when they know of and disregard constitutional violations. Harris's intervention to reverse a grievance granting higher care is direct personal involvement. His reliance on a file that omitted Plaintiff's diagnosis, while enforcing forced medication, contradicts PC 2602 and *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995). His stated rationale—that Plaintiff was "evil"—is a non-medical reason to deny care, actionable under *Jackson*.

S. Gates (CDCR Chief of Mental Health)

- Allegations: Gates oversaw statewide PC 2602 enforcement. Plaintiff alleged Gates approved continuation of involuntary medication even as Plaintiff's file stated he had no mental illness, and she obstructed efforts to raise Plaintiff's level of care. Gates defended the omission of Plaintiff's diagnosis in the file and approved policies that held Plaintiff responsible for psychosis-related behaviors. She also participated in reversing a bed move after Plaintiff had already been prepared to transfer, blocking higher-level care.
- Findings: Dismissed as conclusory.

5

- Objection: Supervisory liability attaches where policy causes harm. *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013). Gates enforced a statewide policy of forcing medication under PC 2602 while refusing to list or treat the underlying diagnosis. This policy directly contradicts *Coleman* standards and constitutes deliberate indifference.

C. Soares (Chief Psychologist)

- Allegations: Soares was aware of Plaintiff's visible self-injury, psychiatric symptoms, and PC 2602 diagnosis, but refused treatment, labeling Plaintiff's condition behavioral. He dismissed Plaintiff's open wounds and symptoms as not warranting intervention because Plaintiff's file did not list a mental illness.
- Findings: Dismissed in group.
- Objection: *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) holds that ignoring psychiatric needs states a claim. Soares disregarded visible evidence of decompensation and injury for months. His refusal to treat based on the missing diagnosis in the file, while enforcing forced medication, is deliberate indifference.

E. McDaniel (CEA)

- Allegations: McDaniel was part of Plaintiff's treatment planning team. Plaintiff alleged McDaniel blocked higher-level care, continued to classify Plaintiff as "not mentally ill," and allowed Plaintiff to remain in a cell with broken glass despite ongoing self-harm. He also joined Harris and Gates in reversing a bed move after Plaintiff had been packed and given bags to transfer.
- Findings: Dismissed as vague.
- Objection: At the pleading stage, Plaintiff need only allege knowledge and failure to act. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). McDaniel participated in treatment decisions that deliberately ignored Plaintiff's psychosis and wounds. His obstruction of higher-level care demonstrates deliberate indifference.

M. Whittaker (CEO of Health Care)

- Allegations: Whittaker was responsible for overall delivery of medical and mental health care at CSP-COR. Plaintiff alleged Whittaker participated in treatment planning,

6

obstructed transfers to higher care, and enforced the classification of Plaintiff as not mentally ill while continuing PC 2602 forced medication. Whittaker was aware of the broken windows, bloody rags, and Plaintiff's deteriorating mental health, yet took no action. Whittaker also participated in reversing a planned bed move, preventing Plaintiff's transfer after he had been packed for relocation.

- Findings: Dismissed for lack of detail.
- Objection: Under *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991), institutional leaders are liable for systemic deliberate indifference. Whittaker enforced contradictory practices: refusing to recognize a diagnosis in the file while continuing forced medication and denying higher-level care.

H. Doe Defendants

- Allegations: Plaintiff named Doe staff as participants in refusing care, ignoring self-harm, and obstructing higher care.
- Findings: Dismissed as impermissible.
- Objection: Doe pleading is allowed where identities are unknown at filing. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Discovery will reveal names. Premature dismissal prevents Plaintiff from identifying responsible staff.

## IV. CONCLUSION

The Magistrate Judge erred in dismissing Defendants Watson, Vu, Harris, Gates, Soares, McDaniel, Whittaker, and the Doe Defendants. Plaintiff's allegations show:

1. A PC 2602 contradiction: forced medication under a diagnosis while file states no mental illness.
2. Deliberate indifference: Defendants ignored months of self-harm, bloody rags, open wounds, and psychiatric decline.
3. Improper grievance obstruction: Harris's reversal of a granted grievance, retaliation against clinician Lulow, ignored recommendations by unit staff.
4. Bed move reversal: Harris, Gates, McDaniel, and Whittaker reversed Plaintiff's transfer even after he was packed to move, keeping him in harmful conditions.

5. Cell extraction threats: Defendants told Plaintiff he would be forcibly extracted if he refused medication.
6. Mentally ill duty standard: officials, not Plaintiff, bore the duty to intervene once risks were obvious.

Liberally construed, these facts state valid claims under the Eighth Amendment and First Amendment. Plaintiff respectfully requests that the District Judge decline to adopt the dismissal recommendations and allow these claims to proceed.

Respectfully submitted,

*/s/ James Osuna*

DATED: September 16, 2025,

Jamei Osuna BD0868 Plaintiff, Pro Se